**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
DAVID L. JEFFERSON, and                 )
NAIMA A. JEFFERSON,                      )
                                        )
        Plaintiffs,                     )
                                        )
    v.                                  )     Civil Action No. 12-239 (RBW)
                                        )
MARK NATHAN COLLINS, et al.,            )
                                        )
        Defendants.                     )
_____)

## <u>MEMORANDUM OPINION</u>

The plaintiffs, David L. Jefferson and Naima A. Jefferson, bring this action against Mark

Nathan Collins, B&C Homebuyers, LLC ("B&C"), Victor O. Villalobos, and VB Platinum Tile

& Carpet, Inc., <u>dba</u> Platinum Builders, Inc. ("Platinum Builders"), asserting claims for breach of

contract, fraud, and other violations of District of Columbia law arising out of the plaintiffs'

purchase of residential real estate located at 1121 Kalmia Road, N.W., Washington, D.C. (the

"Property").  <u>See</u> Amended Complaint ("Am. Compl.") ¶¶ 8, 36-74.  Currently before the Court

are three motions to dismiss filed by Collins, B&C, and Platinum Builders and Villalobos.  Upon

careful consideration of the parties' submissions,[1] the Court concludes for the following reasons

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: the Memorandum of Points and Authorities in Support of Motion of Defendant Mark Nathan Collins to Dismiss Amended Complaint ("Collins' Mem."); the Memorandum of Points and Authorities in Support of Motion of Defendant B&C Homebuyers, LLC to Dismiss Amended Complaint ("B&C's Mem."); Defendant Victor O. Villalobos and VB Platinum Tile & Carpet, Inc.'s Motion to Dismiss Plaintiffs' Amended Complaint and Statement of Points and Authorities ("Renovator Defs.' Mem."); the plaintiffs' Opposition to Defendant Collins' Motion to Dismiss ("Pls.' Collins Opp'n"); the plaintiffs' Opposition to Defendant B&C Homebuyers' Motion to Dismiss ("Pls.' B&C Opp'n"); the plaintiffs' Opposition to Defendants Victor O. Villalobos and VB Platinum Tile & Carpet, Inc.'s Motion to Dismiss ("Pls.' Renovator Defs.' Opp'n"); and Defendants Victor O. Villalobos and VB Platinum tile & Carpet, Inc.'s Reply to Plaintiffs' Opposition to their Motion to Dismiss Plaintiffs' Amended Complaint ("Renovator Defs.' Reply").

that Collins' motion must be denied, B&C's motion must be granted in part and denied in part, and Platinum Builders' and Villalobos' motion must also be granted in part and denied in part.

## I. BACKGROUND

The amended complaint contains the following allegations.  On February 10, 2011, B&C and Collins "purchased the Property from a bank."  Am. Compl. ¶ 9.  Collins then retained Platinum Builders and Villalobos (the "Renovator Defendants") "to act as his agent for remodeling the Property for re-sale."  Id.  "In June 2011, [the p]laintiffs and their two children relocated to Washington, D.C. and began searching for a home for their family."  Id. ¶ 10.  They "viewed the Multiple Listing Service listing for the Property," in which the defendants marketed the Property as a "'gorgeous renovation.'"  Id.  A month later, in July 2011, the plaintiffs "entered into a standard . . . Regional Sales Contract (the "Contract") to purchase the Property from . . . B&C."  Id. ¶ 11.  "Collins executed the Contract and all related forms and addenda on behalf of . . . B&C."  Id.

The plaintiffs then "had a home inspection performed" at the Property.  Id.  ¶ 12.  "This inspection revealed a number of deficiencies in the home, including in the electrical systems."  Id.  "Using the standard [Contract] . . . Addendum forms, [the p]laintiffs requested that certain repairs be made," and "Collins agreed to make those repairs."  Id.

"On August 17, 2011, the designated settlement date, [the p]laintiffs performed a final walk-through of the Property," during "which they noticed that certain repairs were not yet completed."  Id. ¶ 13.  The plaintiffs told Collins "that the electrical system required additional work," and while Collins "acknowledged that the electric system was not in normal working order," he "assured [the p]laintiffs that all repairs would be performed, and agreed to perform a

'heavy-up' to fix the electrical system" at a later date. Id. "Relying on . . . Collins' promises to complete the work after closing, [the p]laintiffs proceeded with settlement that afternoon." Id.

The following week, on "August 25, 2011, [the d]efendants sent an electrician to the Property, ostensibly to complete the 'heavy-up'" work on the electrical system. Id. ¶ 14. Although the electrician completed some work, he "also identified additional required repairs that he could not perform at that time." Id. He did not, however, "complete the 'heavy-up'" work as Collins had promised. Id. As a result, "electrical issues prevented [the p]laintiffs from fully utilizing their home." Id.

Several weeks later, on "September 7, 2011, [the p]laintiffs discovered that water was leaking into their basement because the sump pump was not operating." Id. ¶ 15. They "immediately contacted a plumber to address the issue." Id. But, before the plumber arrived, "water continued to flow out of the sump pump and into [the p]laintiffs' basement, damaging the carpet and [the p]laintiffs' property therein." Id. The plaintiffs thereafter "contacted a restoration company to address the water damage." Id.

On "September 9, 2011, . . . Villalobos finally arrived at the Property with his electrician." Id. ¶ 16. "Villalobos promised that his electrician would repair all outstanding issues the next day, but he did not show up at the appointed time." Id.

The following day, on "September 10, 2011, the restoration company retained by [the p]laintiffs arrived to address the water damage in the basement." Id. ¶ 17. "Upon removing the damaged carpet, the contractor informed [the p]laintiffs that they had asbestos flooring in their basement, and that the basement had prior water damage." Id. The plaintiffs then "retained an environmental clean-up company to investigate the asbestos" problem. Id.

"Unwilling to continue to wait for [the d]efendants to address the electrical issues in [their] home, [the p]laintiffs contacted their own electrician." Id. ¶ 18.  The plaintiffs' electrician inspected the Property on September 15, 2011, and "found numerous problems, including improper installation and illegal wiring resulting in a circuit overload." Id.

On "September 16, 2011, [the p]laintiffs' environmental contractor confirmed the presence of asbestos in the Property." Id. ¶ 19.  "The asbestos was disturbed by the water damage and therefore needed to be abated." Id.  The plaintiffs were also forced "to destroy all of their property in their contaminated basement." Id.

On the next day, "September 17, 2011, [the p]laintiffs gave [the d]efendants one last chance to correct the electrical issues and allowed . . . Villalobos' electricians to work on the home." Id. ¶ 20.  "[T]he electricians discovered additional problems with the wiring," which they felt obligated "to disclose to [the p]laintiffs." Id.  "The electricians described these issues as a 'fire hazard.'" Id.  In response to those revelations, Villalobos told the electricians "that they were 'talking too much' and made arrangements for them to leave as soon as possible without completing the necessary repairs." Id.  The defendants never completed the "'heavy-up'" work on the electrical system, resulting in the plaintiffs "retain[ing] their own electrician to correct the multiple deficiencies and hazards in the electrical system." Id. ¶¶ 20-21.

"As the weather turned colder, [the p]laintiffs discovered that [the d]efendants failed to properly install the [heating, ventilation, and air conditioning ("HVAC")] system in the Property, rendering the heating and cooling system inoperable in certain areas of the house." Id. ¶ 22.  "This defect, which includes ducts that were not properly connected, was concealed by the drywall in the Property." Id.  The plaintiffs "incurred further damages diagnosing the problems"

and anticipate that they "will incur additional damages restoring [the HVAC system] to normal working order." Id.

The plaintiffs "later discovered that an area of the first floor of the Property was sagging." Id. ¶ 23. They consequently "retained a structural engineer to evaluate the problem, who determined that [the d]efendants improperly removed at least one and possibly two load bearing walls during their remodeling, causing significant structural damage to the Property." Id.

"Due to the effects of the presence of asbestos, the water damage, the structural damages and the inoperable HVAC system, [the p]laintiffs are required to demolish and fully renovate their basement and to perform additional repairs." Id. ¶ 24. They "have already spent over $25,000 repairing their home and will need to spend well over six figures to make the Property safe and habitable." Id. "Prior to selling the Property to [the p]laintiffs, [the d]efendants remodeled the basement, including installing new carpet, new windows, and a re-finished bathroom." Id. ¶ 25. This indicates to the plaintiffs that the "[d]efendants had knowledge of the presence of asbestos, prior water damage, and structural defects in the Property." Id. Yet, "[n]o [d]efendant disclosed the existence of these hazards, defects and damages to [the p]laintiffs." Id.

The plaintiffs instituted this action in the Superior Court for the District of Columbia on January 20, 2012, and Collins and B&C later removed the case to this Court on February 13, 2012, invoking the Court's diversity jurisdiction. The plaintiffs' amended complaint, filed on March 2, 2012, contains the following seven counts, all of which arise under District of Columbia law: Breach of Contract—against Collins & B&C (Count I), id. ¶¶ 36-41; Breach of the Implied Covenant of Good Faith and Fair Dealing—against Collins and B&C (Count II), id. ¶¶ 42-46; Fraud—against all defendants (Count III), id. ¶¶ 47-53; Negligent Misrepresentation— against all defendants (Count IV), id. ¶¶ 54-59; Violation of the District of Columbia Consumer

Protection Procedures Act ("D.C. Consumer Protection Act"), D.C. Code § 28-3904 (2001)—against all defendants (Count V), id. ¶¶ 60-65; Breach of Warranty—against Collins and B&C (Count VI), id. ¶¶ 66-70; and Negligence—against all defendants (Count VII), id. ¶¶ 71-74.

The defendants have now moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion tests whether the complaint "state[s] a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A plaintiff receives the "benefit of all inferences that can be derived from the facts alleged."  Am. Nat'l Ins. Co. v. FDIC, 642 F. 3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks and citation omitted).  But raising a "sheer possibility that a defendant has acted unlawfully" fails to satisfy the facial plausibility requirement.  Iqbal, 556 U.S. at 678.  Rather, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in the complaint, conclusory allegations "are not entitled to the assumption of truth."  Id. at 679.

## III.  ANALYSIS

**A.**     **Collins' Motion to Dismiss**

Collins moves to dismiss all of the claims against him on the ground that, "[a]s an owner and member of B&C," he cannot "be held personally liable for B&C's acts and omissions"

because B&C is "a limited liability company."  Collins' Mem. at 4.  He further contends that the

"plaintiffs have failed to allege facts to support piercing the corporate veil to impose personal

liability" upon him.  Id.  The Court will address each claim asserted against Collins in turn.

    **1.**       **Breach of Contract Claim (Count I)**

Count I of the amended complaint alleges that Collins and B&C breached the Contract

"by failing to deliver the Property with all systems in normal working order and failing to

disclose actually known hazards, damages and defects in the Property."  Am. Compl. ¶ 40.

Collins contends that he is immune from this claim under D.C. Code § 29-803.04(a) (2001),

Collins' Mem. at 4, which provides:

> The debts, obligations, or other liabilities of a limited liability company, whether
> arising in contract, tort, or otherwise shall:
>
> (1) Be solely the debts, obligations, or other liabilities of the company; and
>
> (2) Not become the debts, obligations, or other liabilities of a member or manager
> solely by reason of the member acting as a member or manager acting as a
> manager.

Notably, the plaintiffs do not allege that Collins was a party to the Contract; they instead claim

that they contracted with <u>B&C</u> to purchase the Property, and that Collins merely "executed the

Contract and all related forms and addenda <u>on behalf of</u> . . . B&C."  Am. Compl. ¶ 11 (emphasis

added).  Under a straightforward application of § 29-803, then, it would appear that the

plaintiffs' breach of contract claim is barred because it seeks to hold Collins liable for B&C's

contractual liabilities based solely on his status as a member of B&C.

The plaintiffs, however, assert that Collins may be held personally liable for B&C's

alleged breach of contract on the ground that he is the company's "alter ego."  Pls.' Collins

Opp'n at 4.  Under District of Columbia law,

the alter ego theory . . . appears in cases where a party seeks to pierce the corporate veil and impose liability upon the corporation's shareholders. Generally, the corporate entity will be respected, but a party may be permitted to pierce the corporate veil upon proof that there is (1) unity of ownership and interest, and (2) use of the corporate form to perpetrate fraud or wrong, or other considerations of justice and equity justify it.   In determining whether the corporation is the alter ego of its shareholders, the court will consider various factors, such as (1) whether corporate formalities have been disregarded, (2) whether corporate funds and assets have been extensively intermingled with personal assets, (3) inadequate initial capitalization, and (4) fraudulent use of the corporation to protect personal business from the claims of creditors.

Estate of Raleigh v. Mitchell, 947 A.2d 464, 470-71 (D.C. 2008) (internal citations and quotation marks omitted).  "The inquiry ultimately turns on whether the corporation is, in reality, 'an alter ego or business conduit of the person in control.'"  Lawlor v. District of Columbia, 758 A.2d 964, 975 (D.C. 2000) (citation omitted).

Applying these standards, the Court finds that the plaintiffs have pleaded a plausible claim of alter ego liability as to Collins.  First, the amended complaint shows "unity of ownership and interest" between B&C and Collins by alleging that "Collins owns at least fifty percent of . . . B&C . . . and dominates the conduct of the company."  Am. Compl. ¶ 33.  As factual support for their claim that Collins "dominates" B&C, the plaintiffs allege that Collins acted on B&C's behalf at every stage of the real estate transaction, including the execution of the contract that B&C allegedly breached.  See id. ¶¶ 11, 13.  Second, the amended complaint demonstrates "use of the corporate form to perpetrate fraud or wrong," or at least that "other considerations of justice and equity justify" piercing B&C's corporate veil, insofar as it alleges that Collins, on B&C's behalf, fraudulently induced the plaintiffs to enter into a real estate contract with B&C.  See Am. Compl. ¶¶ 25-31.

Collins characterizes the plaintiffs' allegations as "bald" and "conclusory," and faults the plaintiffs for pleading "no facts from which it could reasonably be inferred that B&C's funds and

assets were extensively intermingled with Mr. Collins' personal assets, B&C was initially inadequately capitalized, or Mr. Collins fraudulently used B&C to shield himself from creditors' claims."  Collins' Mem. at 6-7.  Although the factors identified by Collins are indeed relevant to the veil-piercing analysis, "[n]o single factor is dispositive," Lawlor, 758 A.2d at 975, and "the factor which predominates will vary in each case," Camacho v. 1440 Rhode Island Ave. Corp., 620 A.2d 242, 249 (D.C. 1993).  Nor must the plaintiffs' complaint demonstrate that all of these non-exhaustive factors are satisfied to survive a Rule 12(b)(6) motion.  Cf. McWilliams Ballard, Inc. v. Broadway Mgmt. Co., 636 F. Supp. 2d 1, 8 (D.D.C. 2009) ("While it may be true that plaintiffs have rarely been successful proceeding on [a corporate veil-piercing] theory, what a plaintiff must show at the pleadings stage cannot be equated with what he needs to show to prevail at trial.").  Because the plaintiffs have alleged sufficient facts concerning the relationship between Collins and B&C to state a plausible claim of alter ego liability, Collins' motion to dismiss must be denied as to Count I of the amended complaint.

### 2. Breach of the Implied Covenant of Good Faith and Fair Dealing Claim (Count II)

In the District of Columbia, "'all contracts contain an implied duty of good faith and fair dealing.'"  Murray v. Wells Fargo Home Mortg., 953 A.2d 308, 321 (D.C. 2008) (citation and alteration omitted).  "[A] party to a contract may be liable for a breach of the duty of good faith and fair dealing if the party 'evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party.'"  Id. (citation and alteration omitted).  Count II of the amended complaint asserts that Collins breached the "implied duty of good faith and fair dealing" by "willfully rendering imperfect performance of the contract."  Am. Compl. ¶¶ 42-46.  In light of the Court's conclusion that the plaintiffs have adequately pleaded a breach of contract claim against Collins, and because "conditions of a person's mind," such as

willfulness, "may be alleged generally," Fed. R. Civ. P. 9(b), the Court finds that the amended complaint states a claim against Collins for breach of the implied duty of good faith and fair dealing.  Consequently, Collins' motion to dismiss must be denied as to Count II of the amended complaint.

### 3.    Breach of Warranty Claim (Count VI)

Count VI of the amended complaint asserts a breach of warranty claim against Collins based on the same allegations asserted in support of the plaintiffs' breach of contract claim. Compare Am. Compl. ¶¶ 66-70 (breach of warranty claim), with id. ¶¶ 36-41 (breach of contract claim).  Given that the plaintiffs have adequately pleaded a breach of contract claim against Collins, it follows that their breach of warranty claim is sufficiently pleaded as well. Accordingly, Collins' motion to dismiss will be denied as to Count VI of the amended complaint.

### 4.    Fraud and Tort Claims (Counts III, IV, V, and VII)

Counts III, IV, V, and VII of the amended complaint assert claims against Collins for fraud, id. ¶¶ 47-53; negligent misrepresentation, id. ¶¶ 54-59; violations of the D.C. Consumer Protection Act, id. ¶¶ 60-65; and negligence, id. ¶¶ 71-74.  In contrast to the plaintiffs' contract-based claims, these claims seek to hold Collins liable for his own alleged acts and omissions, rather than B&C's.  See id. ¶¶ 27-30 (alleging that Collins "falsely represented" in a "Seller's Disclosure Statement" that "he had no actual knowledge of any evidence of moisture in the basement, any prior drainage problem[,] . . . any flooding damage," "any environmental hazards, including asbestos," or "any structural defects in the walls or floors").  This is noteworthy because "[e]ven absent grounds to pierce the corporate veil, 'corporate officers are not shielded by the limited liability of the corporation for liability for their own tortious acts.'"  Childs v.

Purll, 882 A.2d 227, 239 (D.C. 2005) (citation omitted).  Rather, "'[t]hey are individually liable for the torts which they commit, participate in, or inspire, even though the acts are performed in the name of the corporation.'"  Id. (citation omitted).  "'Sufficient participation can exist when there is an act or omission by the officer which logically leads to the inference that he had a share in the wrongful acts of the corporation which constitute the offense.'"  Lawlor, 758 A.2d at 975 (citation omitted).

Because the plaintiffs' fraud- and tort-based claims seek to hold Collins personally liable based on his own allegedly tortious conduct, Collins is not immune from those claims under District of Columbia law.  The Court will therefore deny Collins' motion to dismiss Counts III, IV, V, and VII of the amended complaint.

## B.      B&C's Motion to Dismiss

B&C has moved to dismiss all of the plaintiffs' claims, except for their claims under the D.C. Consumer Protection Act.  See B&C's Mem. at 4.  The Court will address each claim in turn.

### 1.      Breach of Contract Claim (Count I)

Count I of the amended complaint alleges that B&C contractually "agreed to deliver the Property with heating, cooling, plumbing and electrical systems in normal working order," and "to disclose in good faith all information required under D.C. Code § 42-1301 et seq.," a section of the D.C. Code which requires certain disclosures by sellers of residential property.  See Am. Compl. ¶¶ 37-38.  It further alleges that B&C "materially breached the contract by failing to deliver the Property with all systems in normal working order and failing to disclose actually known hazards, damages and defects in the Property."  Id. ¶ 40.

### i. Breach for Failure to Deliver the Property with Systems in Working Order Claim

B&C first contends that the plaintiffs fail to state a claim for breach of contract based on B&C's alleged failure to deliver the property with all systems in working order.  B&C's Mem. at 5-6.  It emphasizes that, according to the amended complaint, the plaintiffs conducted inspections of the Property both before and on the day of the closing, and that neither inspection "revealed any problems with the heating, cooling, or plumbing systems."  Id.  B&C further notes that "the alleged defects to the heating, cooling, and plumbing did not occur until well after B&C delivered the Property on August 17, 2011."  Id. at 5.  Given these allegations, B&C argues that "the only reasonable inference to be drawn is that B&C delivered the Property on August 17, 2011[,] with normal working heating, cooling, and plumbing systems."  Id. at 6.

The Court is not convinced by B&C's position.  Drawing all reasonable inferences in the plaintiffs' favor, as the Court must at this stage of the case, the amended complaint indicates that the Property's heating, cooling, and plumbing systems had defects at the time B&C delivered the Property that did not become apparent until after the closing on August 17, 2011.  For instance, the plaintiffs allege that they did not discover the defective installation of the Property's HVAC system until after the closing because the defects were "concealed by the drywall in the Property," and did not manifest until "the weather turned colder."  Am. Compl. ¶ 22.  Thus, even though the plaintiffs' home inspections did not reveal these alleged defects, it does not necessarily follow that the HVAC and plumbing systems were in "normal working order" at the time of delivery, as B&C argues.  An equally plausible inference, and one to which the plaintiffs are entitled at the 12(b)(6) stage, is that the systems contained defects that were latent or not reasonably discoverable at the time of delivery, thus indicating that B&C breached its contractual obligations to the plaintiffs.  See Phenix-Georgetown, Inc. v. Charles H. Tompkins Co., 477

A.2d 215, 222-23 (D.C. 1984) (recognizing that a party may be held liable for breach of contract based on latent defects in real property).

Similarly unpersuasive is B&C's argument that it cannot be held liable for breach of contract based on alleged deficiencies in the Property's electrical system because the "plaintiffs were aware of this defect and chose to accept the Property," and thus waived "any contractual obligation on the part of B&C to deliver the Property with the electrical system in normal working order." B&C's Mem. at 6. In the analogous context of construction contracts, the District of Columbia Court of Appeals recognizes a "general rule" that

> where defects in the work of construction of a building are known or readily discoverable by the purchasers of the property, and no complaint about the quality of the work is promptly made by them, their acceptance of the property discharges any right to damages which they might have had for the defects.

Phenix-Georgetown, 477 A.2d at 222 (citation omitted and emphasis added). The corollary of this rule is that there is no waiver of defective contractual performance when a purchaser does complain promptly about the defect prior to acceptance of the property. Such is the situation here, as the plaintiffs allege that they complained of defects in the Property's electrical system and requested repeatedly that B&C fix them prior to the closing date. See Am. Compl. ¶¶ 12-13. The plaintiffs further allege that they entered into the contract with B&C in reliance on Collins' promise to repair the electrical system after the closing. Id. ¶ 13. Because this alleged conduct is not consistent with a knowing and intentional relinquishment of rights by the plaintiffs, B&C's waiver argument must be rejected.[2]

---

[2] The Court also notes that "[w]hether or not an owner has accepted defective performance is generally a question of fact." Phenix-Georgetown, 477 A.2d at 222 (citation omitted). Thus, B&C's waiver argument is prematurely made at the 12(b)(6) stage.

### ii.  Breach for Failure to Disclose the Property's Known Defects Claim

B&C next argues that the "plaintiffs fail to allege any facts from which it can be reasonably inferred that B&C <u>knew</u> of the alleged defects [at the Property] at the time it made the disclosures" to the plaintiffs, and that Platinum Builders, as the party that performed the renovations, "would have been the only party who would have had knowledge of the alleged defects."  B&C's Mem. at 6-7 (emphasis added).  This argument is largely inapposite in the 12(b)(6) context, where a plaintiff is not required to offer detailed allegations concerning a defendant's knowledge.  <u>See</u> Fed. R. Civ. P. 9(b) ("[K]nowledge[] and other conditions of a person's mind may be alleged generally.").  And while Rule 9(b)'s "nod to the practical difficulties of proving <u>scienter</u> does not absolve plaintiffs of their duty to plead <u>some</u> facts from which the court may reasonably infer knowledge or another mental state," <u>Elemary v. Philipp Holzmann A.G.</u>, 533 F. Supp. 2d 116, 132 (D.D.C. 2008) (citing <u>Twombly</u>, 550 U.S. at 555-56) (emphasis in original), the plaintiffs have satisfied that minimal burden here.  Namely, in support of their claim that all defendants had "actual knowledge of the presence of asbestos, prior water damage, and structural defects in the Property," the plaintiffs allege that Platinum Builders "remodeled the basement" to repair these very defects prior to the sale of the Property.  Am. Compl. ¶ 25.  Although this allegation does not speak directly to the knowledge of B&C and Collins, given that B&C and Collins purchased the Property and then retained Platinum Builders to "remodel[] the Property for re-sale," <u>id.</u> ¶ 9, it is reasonable to infer that both Collins and B&C knew of any defects at the Property of which Platinum Builders were aware.  Thus, construing the plaintiffs' allegations in the light most favorable to them, the amended complaint states a plausible breach of contract claim based on B&C's purported failure to disclose the Property's known defects to the plaintiffs.

### iii. Whether the Plaintiffs' Breach of Contract Claim Survives Delivery and Acceptance of the Deed

B&C also contends that the plaintiffs are "barred from bringing a claim against B&C for breach of the real estate sales contract" because the deed to the Property was transferred to the plaintiffs and they accepted it. B&C's Mem. at 8. "[U]nder the doctrine of merger," the obligations of a seller under a real estate sale contract are generally "satisfied by the delivery to and acceptance by appellant of a deed to the property" because "the provisions of the contract of sale would be considered to have merged in the subsequently-delivered deed." Haviland v. Dawson, 210 A.2d 551, 554 (D.C. 1965). However, "[a]cceptance of the deed does not terminate any covenants or stipulations in the contract which are not in their nature satisfied by delivery of an instrument whose purpose is to transfer title to the property." Id. In other words, "covenants which are independent of the conveyance of title survive delivery of a deed." Meyers v. Antone, 227 A.2d 56, 57 (D.C. 1967).

Here, the parties' contract provided that any "'provisions not satisfied at Settlement will survive the delivery of the deed and will not be merged therein.'" Am. Compl. ¶ 35 (emphasis added). And the plaintiffs' breach of contract claim alleges that, at the time of settlement, B&C failed to satisfy its contractual obligations "to deliver the Property with all systems in normal working order" and "to disclose actually known . . . defects in the Property." Id. ¶ 40. Under the terms of the contract, then, the purportedly breached covenants survived delivery of the deed. B&C's argument must therefore be rejected.

### 2. Breach of the Implied Covenant of Good Faith and Fair Dealing Claim (Count II)

B&C moves to dismiss the plaintiffs' claim for breach of the implied duty of good faith and fair dealing on the grounds that "none of B&C's alleged acts or omissions constitutes

evasion of the contract's spirit, willful imperfect performance, or interference with [the plaintiffs'] performance." B&C's Mem. at 8. The Court disagrees. The plaintiffs allege that B&C "willfully render[ed] imperfect performance of the contract" by "failing to complete agreed upon repairs" and "failing to disclose known damages, defects, and hazards in the [P]roperty." Am. Compl. ¶ 45. Regarding its alleged failure to complete agreed upon repairs, B&C reads the amended complaint as indicating that B&C made a good faith effort to honor the spirit of the contract by at least attempting to perform the repairs. B&C's Mem. at 8-9. But this overlooks the plaintiffs' allegations that B&C evaded the spirit of the contract and acted in bad faith by repeatedly promising to repair the Property's electrical system even though it "did not intend to perform" the repairs and "did not complete the 'heavy-up'" work it had promised. See Am. Compl. ¶¶ 12-14, 20. B&C also maintains that the plaintiffs fail to allege sufficient facts concerning B&C's knowledge of the alleged defects at the Property, but the Court has already rejected this argument in the context of the plaintiffs' breach of contract claim. See supra at 14. Finding none of B&C's contentions persuasive, the Court will deny its motion to dismiss as to Count II of the amended complaint.

### 3.    Fraud Claim (Count III)

"The essential elements of common law fraud are: (1) a false representation (2) in reference to [a] material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation." Va. Acad. of Clinical Psychologists v. Grp. Hosp. & Med. Servs., Inc., 878 A.2d 1226, 1233 (D.C. 2005) (citation omitted). Fraud claims are subject to the heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure, which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P.

9(b).  To satisfy this standard, "'the pleader [must] . . . state the time, place and content of the

false misrepresentations, the fact misrepresented . . . [,] what was retained or given up as a

consequence of the fraud,'" and "identify individuals allegedly involved in the fraud."  United

States ex rel. Williams v. Martin-Baker Aircraft Co., 389 F.3d 1251, 1256 (D.C. Cir. 2004)

(citations omitted).

 The plaintiffs allege three fraudulent representations on B&C's part.  First, the plaintiffs

assert that B&C "falsely marketed" the Property "as a 'gorgeous renovation.'"  Am. Compl. ¶¶

10, 48.  This alleged statement, however, cannot form the predicate for a fraud claim because it

is a "'is a classic example of commercial puffery on which no reasonable person would rely.'"

Pearson v. Chung, 961 A.2d 1067, 1076 (D.C. 2008) (citation omitted); see also Tietsworth v.

Harley-Davidson, Inc., 677 N.W.2d 233, 245 (Wis. 2004) (quoted in Pearson, 961 A.2d at 1076)

(defining puffery as "the exaggerations reasonably to be expected of a seller as to the degree of

quality of his product, the truth or falsity of which cannot be precisely determined"); In re XM

Satellite Radio Holdings Sec. Litig., 479 F. Supp. 2d 165, 180 (D.D.C. 2007) ("Because such

generalized positive statements about 'cost effective,' 'smart,' 'sound' and 'efficient' growth are

vague and incapable of objective verification, they are not the type of statement upon which a

reasonable investor would rely" and instead constitute mere "puffery."); Hoyte v. Yum! Brands,

Inc., 489 F. Supp. 2d 24, 30 (D.D.C. 2007) ("KFC's claims that its restaurants serve the 'best

food' is a non-measurable, 'bald statement of superiority' that is non-actionable puffery.").

B&C's motion to dismiss the plaintiffs' fraud claim will therefore be granted insofar as that

claim is based on B&C's alleged representation of the Property as a "gorgeous renovation."

 Second, the plaintiffs allege that B&C fraudulently "deni[ed] the existence of known

defects and hazards in the [P]roperty," Am. Compl. ¶ 48, including "the presence of asbestos,

prior water damage, and structural defects in the Property," id. ¶ 25. B&C asserts that the amended complaint does not provide factual support for the proposition that B&C knew of the alleged defects. B&C's Mem. at 11-12. However, as explained above in the context of the plaintiffs' breach of contract claim, supra at 14, conditions of a person's mind (e.g., knowledge) may be alleged generally under Rule 9(b), and the plaintiffs have, in any event, pleaded enough facts to support a plausible inference that B&C knew of the alleged defects at the Property. The Court thus will deny B&C's motion to dismiss as to this aspect of the plaintiffs' fraud claim.

Third, the plaintiffs allege that B&C fraudulently "promis[ed] to make certain repairs to the [P]roperty which they did not intend to make." Am. Compl. ¶ 48. Such a theory of "promissory fraud" is actionable in the District of Columbia. See Va. Acad. of Clinical Psychologists, 878 A.2d at 1234 ("A promise or contractual commitment may be actionable as fraud (misrepresentation) if at the time of its making, the promisor had no present intention of carrying it out."). B&C does not dispute this legal principle, but instead maintains that the plaintiffs have "failed to allege facts to support [their] contention that B&C misrepresented its intention to repair the electrical system." B&C's Mem. at 12. Rather, in B&C's view, the amended complaint suggests that it "intended to repair the Property and its promise was not falsely made." Id. But B&C, yet again, overlooks that scienter may be alleged generally under Rule 9(b). Moreover, the amended complaint alleges that B&C repeatedly promised to perform repairs at the Property that it never completed, see, e.g., Am. Compl. ¶¶ 12-14, 20, allegations which provide plausible support for the plaintiffs' claim of promissory fraud. The Court will therefore deny B&C's motion to dismiss as to the plaintiffs' promissory fraud claim.

### 4.      Negligent Misrepresentation Claim (Count IV) and Breach of Warranty Claim (Count VI)

The plaintiffs' negligent misrepresentation claim is based on the same allegations as their fraud claim.  Compare Am. Compl. ¶¶ 54-59 (negligent misrepresentation claim), with id. ¶¶ 47-53 (fraud claim).  Likewise, the plaintiffs' breach of warranty claim is duplicative of their breach of contract claim.  Compare id. ¶¶ 66-70 (breach of warranty claim), with id. ¶¶ 36-41 (breach of contract claim).  In moving to dismiss these claims, B&C merely reasserts arguments that the Court has already addressed in the context of the plaintiffs' breach of contract and fraud claims.  See B&C's Mem. at 13-14.  Accordingly, consistent with the above rulings, the Court will grant B&C's motion to dismiss the plaintiffs' negligent misrepresentation claim insofar as the claim is based on B&C's alleged representation of the Property as a "gorgeous renovation," and will otherwise deny B&C's motion to dismiss the claim.  The Court will also deny B&C's motion to dismiss as to the plaintiffs' breach of warranty claim.

### 5.      Negligence Claim (Count VII)

"[A] claim alleging the tort of negligence must show: (1) that the defendant owed a duty to the plaintiff, (2) breach of that duty, and (3) injury to the plaintiff that was proximately caused by the breach."  Hedgepeth v. Whitman Walker Clinic, 22 A.3d 789, 793 (D.C. 2011).  "The court's threshold determination—namely, the existence of a duty—is 'essentially a question of whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred.'"  Id. (citation omitted).  "To allege negligence, a complaint cannot merely make conclusory assertions but must specify a negligent act and 'characterize the duty whose breach might have resulted in negligence liability.'"  District of Columbia v. White, 442 A.2d 159, 162 (D.C. 1982) (citation omitted).

The plaintiffs' negligence claim asserts that, "[a]s professionals in the business of purchasing, renovating and/or selling residential real estate, [the d]efendants owed a duty of care to the [p]laintiffs to renovate the [P]roperty in a safe, skillful, careful, diligent[,] and workmanlike manner." Am. Compl. ¶ 72. They further allege that the "[d]efendants breached that duty by concealing and/or creating hazardous conditions and structural defects in the [P]roperty and failing to provide the heating, cooling[,] plumbing[,] and electrical systems in normal working order," id. ¶ 73, and that this "breach of duty proximately caused injuries to the [p]laintiffs," id. ¶ 74.

The Court finds these allegations insufficient to state a negligence claim against B&C. Even assuming, as the plaintiffs assert, that B&C had a legal duty to "renovate the [P]roperty in a safe, skillful, careful, diligent, and workmanlike manner," id. ¶ 72, there is no indication that B&C breached that purported duty because it is undisputed that B&C did not renovate the Property—the Renovator Defendants did, see Am. Compl. ¶ 9 (stating that Collins retained the Renovator Defendants to "remodel[] the Property for re-sale"). If anything, then, the amended complaint suggests that the Renovator Defendants breached the purported duty identified by the plaintiffs by negligently renovating the Property. And, insofar as the plaintiffs assert that B&C breached a duty not by creating defects in the Property, but by failing to disclose and otherwise misrepresenting those alleged defects, see id. ¶ 73, those allegations are fairly encompassed within the plaintiffs' negligent misrepresentation claim, see id. ¶¶ 54-59, which the Court has upheld against B&C's motion for dismissal, see supra at 18-19.

The plaintiffs attempt to save their negligence claim by arguing that B&C had an agency relationship with the Renovator Defendants, and thus is vicariously liable for their negligence. See Pls.' B&C Opp'n at 11. The District of Columbia Court of Appeals has stated that:

The existence of an agency relationship is a question of fact, for which the person asserting the relationship has the burden of proof.  Our case law has established a twofold test for determining whether such a relationship exists:

> First, the court must look for evidence of the parties' consent to establish a principal-agent relationship.  Second, the court must look for evidence that the activities of the agent are subject to the principal's control.

> Relevant factors include (1) the selection and engagement of the servant, (2) the payment of wages, (3) the power to discharge, (4) the power to control the servant's conduct, (5) and whether the work is part of the regular business of the employer.  The cases emphasize that the right to control, rather than its actual exercise, is usually dispositive of whether there is an agency relationship.

Jackson v. Loews Wash. Cinemas, Inc., 944 A.2d 1088, 1097 (D.C. 2008) (internal citations and quotation marks omitted).  Although the existence and extent of an agency relationship are factual questions, a plaintiff must plead facts that plausibly support an inference that an agency relationship existed in order to survive a Rule 12(b)(6) motion.  See Kiobel v. Royal Dutch Petro. Co., 621 F.3d 111, 195 (2d Cir. 2010); Acosta Orellana v. CropLife Int'l, 711 F. Supp. 2d 81, 111 n.36 (D.D.C. 2010); Cumis Ins. Soc., Inc. v. Peters, 983 F. Supp. 787, 796 (N.D. Ill. 1997).

None of the indicia of an agency relationship between B&C and the Renovator Defendants appear in the amended complaint.  Rather, the plaintiffs advance only a conclusory allegation that Collins retained the Renovator Defendants "to act as his agent[s] for remodeling the Property for re-sale."  Am. Compl. ¶ 9 (emphasis added).  This allegation says nothing of an agency relationship between B&C and the Renovator Defendants.  Because the amended complaint does not give rise to a reasonable inference of an agency relationship, and because the plaintiffs have otherwise failed to state a plausible negligence claim against B&C, the Court will grant B&C's motion to dismiss as to Count VII of the amended complaint.

**C.      The Renovator Defendants' Motion to Dismiss**

The amended complaint asserts four claims against the Renovator Defendants: fraud (Count III), negligent misrepresentation (Count IV), violation of the D.C. Consumer Protection Act (Count V), and negligence (Count VII).  See Am. Compl. ¶¶ 47-65, 71-74.  The Renovator Defendants move to dismiss all of these claims.  See Renovator Defs.' Mem. at 1.

**1.      Timeliness of the Renovator Defendants' Motion to Dismiss**

The plaintiffs first argue that the Renovator Defendants' motion to dismiss is untimely, noting that, although they stipulated to a two week extension for the Renovator Defendants to file an "answer" to the amended complaint, ECF No. 11, the plaintiffs "understood this as a request for additional time to prepare an <u>answer</u>, not a motion to dismiss," Pls.' Renovator Defs.' Opp'n at 10 (emphasis added).  If the Renovator Defendants had requested an extension to file a motion to dismiss, the plaintiffs claim they "would not have agreed" to such an extension, and thus ask the Court to deem the motion untimely.  <u>Id.</u>  The Renovator Defendants respond by explaining their usage of the word "answer" in their stipulation was an "oversight" of counsel, and that their "true intent" was to seek an extension to file an "appropriate response," be it a motion to dismiss or an answer, to the plaintiffs' amended complaint.  Renovator Defs.' Reply at 7 n.5.

Despite the Renovator Defendants' inartfully worded stipulation, the Court will, in the interests of judicial economy and efficiency, consider the merits of their motion to dismiss and not deem it untimely.  The Renovator Defendants will therefore be granted, <u>nunc</u> <u>pro</u> <u>tunc</u> to April 9, 2012, an extension of time to file their motion to dismiss.

2.     **Fraud Claim (Count III) and Negligent Misrepresentation Claim (Count IV)**

The plaintiffs' fraud and negligent misrepresentation claims allege that the Renovator

Defendants defrauded the plaintiffs in two respects: (1) by making "false statements and/or

omissions of fact" concerning the "existence of known defects and hazards in the [P]roperty,"

and (2) by "promising to make certain repairs to the [P]roperty which they did not intend to

make."[3]  Am. Compl. ¶¶ 48, 55.  The plaintiffs assert that the Renovator Defendants engaged in

this fraudulent conduct "to induce [the p]laintiffs to complete settlement."  Id.  According to the

Renovator Defendants, these claims are deficiently pleaded in several respects.  See Renovator

Defs.' Mem. at 6-15.  The Court agrees.

As previously noted, "[t]he essential elements of common law fraud are: (1) a false

representation (2) in reference to [a] material fact, (3) made with knowledge of its falsity, (4)

with the intent to deceive, and (5) action is taken in reliance upon the representation."  Va. Acad.

of Clinical Psychologists, 878 A.2d at 1233 (citation omitted).  "The elements of a claim of

negligent misrepresentation are similar, except that they do not include the scienter requirements

of a fraud claim."  Parr v. Ebrahimian, 774 F. Supp. 2d 234, 240 (D.D.C. 2011).  Namely, "the

plaintiff must show that the defendant 'made a false statement or omitted a fact that he [or she]

had a duty to disclose,' that the false statement or omission 'involved a material issue,' and that

the plaintiff 'reasonably relied upon the false statement or omission to [his or her] detriment.'"

Id. (quoting Redmond v. State Farm Ins. Co., 728 A.2d 1202, 1207 (D.C. 1999)).  To prevail on

either claim, the "plaintiff must . . . have suffered some injury as a consequence of his [or her]

reliance on the misrepresentation [or omission]."  Chedick v. Nash, 151 F.3d 1077, 1081 (D.C.

---

[3] The plaintiffs clarify in their opposition brief that they "do not allege that the Renovat[or] Defendants falsely
marketed the Property for sale or made any false statements in the Seller's Disclosure Statement"; rather, these fraud
allegations are levied against Collins and B&C only.  Pls.' Renovator Defs.' Opp'n at 4 n.2.

Cir. 1998) (citing <u>Dresser v. Sunderland Apartments Tenants Ass'n</u>, 465 A.2d 835, 839 (D.C. 1983)).  And this injury must be pleaded with particularity in order to satisfy Rule 9(b).  <u>See</u> <u>United States ex rel. Williams</u>, 389 F.3d at 1256 (Rule 9(b) requires a pleader to allege, among other things, "'what was retained or given up as a consequence of the fraud.'" (citations omitted)).

The plaintiffs' allegations fail to satisfy the detrimental reliance element of their fraud and negligent misrepresentation claims.  The sole injury the plaintiffs claim they suffered as a consequence of the Renovator Defendants' alleged misrepresentations and omissions is that they were induced to "complete settlement" on the Property.  Am. Compl. ¶¶ 31, 48, 55.  Thus, as a temporal matter, only fraudulent statements or omissions <u>pre-dating</u> the closing on the Property, which occurred on August 17, 2011, <u>id.</u> ¶ 13, could have caused this purported injury.  The amended complaint, however, does not allege that the Renovator Defendants made any representations to or had any contact with the plaintiffs prior to the closing, nor does it allege that the Renovator Defendants were even aware that the plaintiffs were potential buyers of the Property.  Rather, the first contact the Renovator Defendants allegedly had with the plaintiffs occurred more than three weeks after the closing, on "September 9, 2011," when "Villalobos finally arrived at the Property with his electrician."  <u>Id.</u> ¶ 16.  The amended complaint thus presents no factual basis for the claim that the Renovator Defendants fraudulently induced the plaintiffs, either through affirmative acts or omissions, to complete the settlement of the Property.  <u>See</u> <u>Parr</u>, 774 F. Supp. 2d at 240-41 (dismissing fraud and negligent misrepresentation claims where the plaintiff's "complaint [did] not allege that the . . . [d]efendants made any misrepresentation directly to her," and did not otherwise show that the plaintiff "reasonably relied . . . to her detriment" on the defendant's misrepresentations or omissions).

While not disputing that the Renovator Defendants had no contact with the plaintiffs prior to the closing, the plaintiffs contend that the Renovator Defendants had a "duty to speak," which they breached by failing to disclose the Property's defects to the plaintiffs prior to the closing. Pls.' Renovator Defs.' Opp'n at 4-5. To be sure, "D.C. law provides that nondisclosure of a fact can constitute a fraudulent misrepresentation" when "'there is a duty to speak.'" Sununu v. Philippine Airlines, Inc., 792 F. Supp. 2d 39, 51 (D.D.C. 2011) (quoting Kapiloff v. Abington Plaza Corp., 59 A.2d 516, 517 (D.C. 1948)). But, in the District of Columbia and other jurisdictions, a duty to speak arises in the fraud context only when there is some special relationship or contact between the parties justifying the imposition of a duty. See Pyne v. Jam. Nutrition Holdings Ltd., 497 A.2d 118, 131 (D.C. 1985) (recognizing a duty to speak based on a fiduciary relationship); Kapiloff, 59 A.2d at 518 (recognizing an "affirmative duty to speak as a result of a partial disclosure"); In re Spectrum, Ltd., No. 02-02463, 2007 WL 2320587, at *2 (Bankr. D.D.C. Aug. 9, 2007) (rejecting fraudulent non-disclosure argument where the "complaint fail[ed] to allege the existence of a special or fiduciary relationship between [the plaintiff] and the defendants or other circumstances that would give rise to a duty to disclose" under District of Columbia law); accord Rio Grande Royalty Co. v. Energy Transfer Partners, L.P., 620 F.3d 465, 468 (5th Cir. 2010) ("[S]ilence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent. Generally, no duty of disclosure arises without evidence of a confidential or fiduciary relationship. . . . Outside of such a relationship, a duty to disclose may arise, among other circumstances, when one makes a partial disclosure and conveys a false impression." (internal citations and quotation marks omitted)). Here, the plaintiffs do not allege that they had a fiduciary or special relationship with the Renovator Defendants, nor do they claim that the

Renovator Defendants made partial disclosures to them or engaged in dealings with the plaintiffs during which they concealed material facts to induce them to purchase or proceed to settlement of the Property.  In fact, the plaintiffs do not allege <u>any</u> contact with the Renovator Defendants prior to closing on the Property.  The amended complaint therefore provides no basis for imposing a duty to speak on the Renovator Defendants under District of Columbia law. Accordingly, because the plaintiffs have failed to state a plausible claim of fraud or negligent misrepresentation against the Renovator Defendants, the Court will grant the Renovator Defendants' motion to dismiss as to Counts III and IV of the amended complaint.

**3.      Claim for Violations of the D.C. Consumer Protection Act (Count V)**

Count V of the amended complaint alleges that all defendants "committed unlawful trade practices" in violation of the D.C. Consumer Protection Act, D.C. Code § 28-3904 (2001), including "remodeling the Property without proper licenses and permits, misrepresenting that they were approved or accredited members of the Better Business Bureau and the National Kitchen and Bath Association, failing to disclose the existence of known hazards and defects, falsely stating that certain repairs had been or would be made, and violating certain D.C. and federal regulations."  Pls.' Renovator Defs.' Opp'n at 7; Am. Compl. ¶¶ 32, 64.  The plaintiffs contend that this alleged misconduct violated provisions of the D.C. Consumer Protection Act, which make it unlawful (1) to "represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have," D.C. Code § 28-3904(a); (2) to "represent that the person has a sponsorship, approval, status, affiliation, certification, or connection that the person does not have," <u>id.</u> § 28-3904(b); (3) to "misrepresent as to a material fact which has a tendency to mislead," <u>id.</u> § 28-3904(e); (4) to "fail to state a material fact if such failure tends to mislead," <u>id.</u> § 28-3904(f); (5)

to "falsely state or represent that repairs, alterations, modifications, or servicing have been made and receiving remuneration therefor when they have not been made," id. § 28-3904(p); and (6) to "violate any provision of title 16 of the District of Columbia Municipal Regulations," id. § 28-3904(dd).  See Pls.' Renovator Defs.' Opp'n at 7-8.

According to the Renovator Defendants, the plaintiffs' allegations that the Renovator Defendants "remodel[ed] the Property without proper licenses or permits" and violated "D.C. and federal regulations" are mere conclusory assertions unsupported by factual content. Renovator Defs.' Reply at 5.  The Court agrees.  While the Court appreciates that the D.C. Consumer Protection Act must be "construed and applied liberally to promote its" remedial purposes, such as the elimination of "all improper trade practices," D.C. Code § 28-3901(c), (b)(1), federal pleading standards nonetheless require the plaintiffs to allege sufficient factual content to support a plausible claim to relief, see Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570.  Here, the plaintiffs' allegation that the Renovator Defendants remodeled the Property "without proper licenses" and "permits" in violation of District of Columbia regulations is devoid of factual support and is instead based "[u]pon information and belief."  Am. Compl. ¶¶ 32, 64.[4]  To be sure, "[t]he Twombly plausibility standard . . . does not prevent a plaintiff from 'pleading facts alleged upon information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible."  Arista Records, LLC v. Doe 3, 604 F.3d 110, 120

---

[4] Specifically, the plaintiffs allege that the Renovator Defendants violated 16 DCMR § 800.1, Am. Compl. ¶ 64, which provides that

> [n]o person shall require or accept any payment for a home improvement contract to be undertaken in the District in advance of the full completion of all work required to be performed under the contract, unless that person is licensed as a home improvement contractor or as a licensed salesperson employed by a licensed contractor in accordance with the provisions of this chapter.

(2d Cir. 2010) (internal citations omitted).  But it appears that neither of these conditions is satisfied here.  The plaintiffs have not shown that the facts concerning the Renovator Defendants' possession of government-issued licenses and permits are peculiarly within the Renovator Defendants control (in fact, one would expect such information to be a matter of public record).  Nor have the plaintiffs pleaded facts supporting a plausible inference that the Renovator Defendants lacked such permits and licenses.  And insofar as the plaintiffs allege that the Renovator Defendants violated certain federal regulations, <u>see</u> Am. Compl. ¶ 64 (alleging violations of "the Environmental Protection Agency Regulation of Residential Property Renovation (40 CFR 745)"), they have not explained how such a violation would give rise to a claim under the D.C. Consumer Protection Act, nor have they identified the particular regulatory provision they believe the Renovator Defendants violated.  Accordingly, the Court will grant dismissal of the plaintiffs' claims under the D.C. Consumer Protection Act insofar as those claims are based on the Renovator Defendants' alleged remodeling of the Property without proper licenses and permits in violation of District of Columbia regulations, and the Renovator Defendants' purported violations of federal regulations.

The Renovator Defendants also contend that the plaintiffs' claims under the D.C. Consumer Protection Act alleging material misrepresentations fail to satisfy Rule 9(b)'s particularly requirement for pleading fraud.  <u>See</u> Renovator Defs.' Mem. at 16; Renovator Defs.' Reply at 6.  A former member of this Court held that Rule 9(b)'s particularly requirement applies to fraud-based claims asserted under subsections (e) and (f) of § 28-3904 of the D.C. Consumer Protection Act.  <u>See</u> <u>Witherspoon v. Philip Morris, Inc.</u>, 964 F. Supp. 455, 464 (D.D.C. 1997) ("Although there are no District of Columbia cases in which Rule 9(b) has been applied to the provisions triggered by this case in deceptive trade practices actions, courts in other jurisdictions

analyzing similar provisions of similar statutes have concluded that allegations supporting the claim 'must be pleaded with particularity because they are akin to allegations of fraud.'" (collecting cases)).  Because the undersigned member of the Court finds <u>Witherspoon</u>'s rationale convincing, and given that the plaintiffs do not dispute Rule 9(b)'s applicability here, <u>see</u> Pls.' Renovator Defs.' Opp'n at 7-8, the Court will apply the Rule 9(b) standard to the plaintiffs' fraud-based claims under the D.C. Consumer Protection Act.

As previously noted, to satisfy Rule 9(b), "'the pleader [must] . . . state the time, place and content of the false misrepresentations, the fact misrepresented . . . [,] what was retained or given up as a consequence of the fraud,'"[5] and "identify individuals allegedly involved in the fraud."  <u>United States ex rel. Williams</u>, 389 F.3d at 1256 (citations omitted).  And when a fraud claim is based on omissions rather than affirmative misstatements, Rule 9(b) requires the plaintiff to plead, among other things, who omitted the facts, what facts were omitted, why the omission was misleading, and when the disclosure should have been made.  <u>See</u> <u>Hite v. Leeds Weld Equity Partners, IV, LP</u>, 429 F. Supp. 2d 110, 115 (D.D.C. 2006); <u>Breeden v. Richmond Comm. College</u>, 171 F.R.D. 189, 195 (M.D.N.C. 1997); <u>Cadet v. Draper & Goldberg, PLLC</u>, No. 05-2105, 2007 WL 2893418, at *5 (D.D.C. Sept. 28, 2007).

The plaintiffs allege that the Renovator Defendants made three misrepresentations in violation of the D.C. Consumer Protection Act, <u>see</u> Pls.' Renovator Defs.' Opp'n at 7; Am. Compl. ¶ 64, but they have not pleaded sufficient details concerning these alleged misrepresentations to satisfy Rule 9(b).  First, the plaintiffs assert that the Renovator Defendants

---

[5] While the D.C. Consumer Protection Act states that it is violated "whether or not any consumer is in fact misled, deceived or damaged thereby," D.C. Code § 28-3904, a plaintiff asserting a claim under the D.C. Consumer Protection Act must nonetheless allege some "concrete injury-in-fact" to demonstrate standing.  <u>See</u> <u>Grayson v. AT&T Corp.</u>, 15 A.3d 219, 243-44 (D.C. 2011); <u>Shaw v. Marriott Int'l, Inc.</u>, 605 F.3d 1039, 1042-43 (D.C. Cir. 2010).

"misrepresent[ed] that [they] were approved or accredited members of the Better Business Bureau and the National Kitchen and Bath Association."  Am. Compl. ¶ 64.  The amended complaint, however, fails to plead when and where this statement was made, who made it, and what the plaintiffs gave up or retained as a consequence of the fraud.  Second, the plaintiffs allege that the Renovator Defendants failed to disclose and in fact "[a]ffirmatively den[ied] the existence of known defects and hazards in the [P]roperty."  Id. ¶¶ 64, 25.  As factual support for this claim, the amended complaint asserts that the Renovator Defendants "remodeled the basement, including installing new carpet, new windows, and a re-finished bathroom," thus indicating that they "had actual knowledge of the presence of asbestos, prior water damage, and structural defects in the Property," but that the Renovator Defendants nonetheless failed to "disclose[] the existence of these hazards, defects and damages to [the p]laintiffs."  Id. ¶ 25.  Yet, insofar as this claim is based on affirmative misstatements, the plaintiffs do not allege who made the statement, when or where it was made, or how it injured the plaintiffs.  And to the extent that the claim is based on omissions, the plaintiffs fail to plead who, in particular, should have made the disclosures, when they believe the disclosures should have been made, and what they gave up or retained as a result of the Renovator Defendants' purported omissions.  Finally, the plaintiffs allege that the Renovator Defendants "[f]alsely stat[ed] that certain repairs had been made when they had not been made."  Id. ¶ 64.  Here again, the amended complaint offers no details concerning when and where this statement was made, who made it,[6] and what the plaintiffs gave up or retained as a consequence of it.  Because the plaintiffs' fraud-based claims under the D.C.

---

[6] Although the plaintiffs do allege that on "September 9, 2011, . . . [d]efendant Villalobos promised that his electrician would repair all outstanding issues the next day" and that the Renovator Defendants never performed such repairs, Am. Compl. ¶¶ 16, 20, this allegation concerns a statement of Villalobos' future intent to perform repairs, not a statement about repairs that purportedly "had been made," id. ¶ 64.

Consumer Protection Act fail to satisfy Rule 9(b)'s particularity requirement, the Court will dismiss the claims without prejudice, and will grant the plaintiffs leave to amend their complaint to cure the deficiencies.  See Firestone v. Firestone, 76 F.3d 1205, 1209 (D.C. Cir. 1996) ("Failure to plead fraud with particularity . . . does not support a dismissal with prejudice.  To the contrary, leave to amend is 'almost always' allowed to cure deficiencies in pleading fraud." (citation omitted)).

### 4.    Negligence Claim (Count VII)

Count VII of the amended complaint alleges that the Renovator Defendants "owed a duty of care to the [p]laintiffs to renovate the [P]roperty in a safe, skillful, careful, diligent and workmanlike manner," and that they breached this duty "by concealing and/or creating hazardous conditions and structural defects in the [P]roperty and failing to provide the heating, cooling[,] plumbing[,] and electrical systems in normal working order."  Am. Compl. ¶¶ 72-73.  In moving to dismiss this claim, the Renovator Defendants assert that they "do not, as a matter of law owe [the p]laintiffs any duty of reasonable care" because the plaintiffs "are solely seeking to recover their economic losses," and have not pleaded the requisite "nexus" between the parties to recover such losses.  Renovator Defs.' Mem. at 18.  The Court disagrees.

The plaintiffs are essentially seeking to hold the Renovator Defendants liable for economic losses allegedly incurred as a result of the Renovator Defendants' negligent performance of their contract with B&C.  "In cases involving negligent performance of a contract, liability to third parties who suffer only economic loss as a result depends on whether or not the defendant owed a duty of reasonable care to the plaintiff."  Aronoff v. Lenkin Co., 618 A.2d 669, 685 (D.C. 1992).  "If no duty was owing, the lack of contractual privity normally bars recovery."  Id.  The "'determination of whether a duty exists is the result of a variety of

considerations and not solely the relationship between the parties.'" <u>Presley v. Comm. Moving & Rigging, Inc.</u>, 25 A.3d 873, 888 (D.C. 2011) (citation omitted).  "In the absence of contractual privity with an unrelated third party, whether a party should have foreseen that its contractual undertaking was necessary for the protection of the third party is important." <u>Id.</u>  "Thus, even in the absence of contractual privity, [courts must] still look to the contract to determine the scope of the undertaking as it relates to the protection of the third party." <u>Id.</u>  "'[T]he existence of a duty is also shaped by considerations of fairness and results ultimately from policy decisions made by the courts and the legislatures.'" <u>Id.</u> (citation omitted).

The District of Columbia Court of Appeals has "acknowledged that a legal duty arises when a party undertakes to 'render[] services to another which he should recognize as necessary for the protection of a third person or his things.'" <u>Id.</u> at 888-89 (citation omitted).  "[I]n determining whether a party who performs services under a contract for one party assumes a duty to an unrelated third party," the court of appeals follows Restatement (Second) of Torts § 324A (1965), <u>id.</u> at 889, which provides that:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Given the preliminary stage of this litigation, the contract between B&C and the Renovator Defendants is not yet before the Court for its review, nor have the plaintiffs included the terms of the contract in their amended complaint.  Because this "contract . . . [is] central to [the Court's] analysis of duty" under District of Columbia law, insofar as "it defines the scope of the undertaking and the services rendered by" the Renovator Defendants, <u>Presley</u>, 25 A.3d at

889, it would be premature for the Court to rule on whether the Renovator Defendants owed a legal duty to the plaintiffs on this ground.

Moreover, another potential basis for the Renovator Defendants' duty of care is found in Maryland's common law, which the District of Columbia Court of Appeals generally follows in the absence of on-point, controlling authority.[7]  In Maryland, "'the determination of whether a duty [in tort] will be imposed in [an economic loss case] . . . depend[s] upon the <u>risk</u> generated by the negligent conduct, rather than upon the fortuitous circumstance of the nature of the resultant damage.'"  <u>Morris v. Osmose Wood Preserving</u>, 667 A.2d 624, 631 (Md. 1995) (citation omitted and emphasis added).  Thus,

> "[w]here the failure to exercise due care creates a risk of economic loss <u>only</u>, [Maryland] courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability.  This intimate nexus is satisfied by contractual privity or its equivalent.  By contrast, where the risk created is one of personal injury, no such direct relationship need be shown, and the principal determinant of duty becomes foreseeability."

<u>Chicago Title Ins. Co. v. Allfirst Bank</u>, 905 A.2d 366, 378 (Md. 2006) (citation omitted and emphasis added).  In <u>Council of Co-Owners Atlantis Condominium, Inc. v. Whiting-Turner Contracting Co.</u>, 517 A.2d 336 (Md. 1986), the Maryland Court of Appeals applied these principles in a case factually analogous to this case, and provided the following summary of its rulings:

> The principal issue presented by this appeal is the extent to which tort liability should be imposed upon builders and architects for damages suffered by parties who enjoy no contractual privity with them. We hold that privity is not an absolute prerequisite to the existence of a tort duty in this type of case, and that the duty of builders and architects to use due care in the design, inspection, and

---

[7] "[D]ecisions of the Court of Appeals of Maryland are 'accorded the most respectful consideration by [District of Columbia] courts' . . . because 'District of Columbia common law is derived from Maryland law.'"  <u>English v. United States</u>, 25 A.3d 46, 54 n.11 (D.C. 2011) (citations omitted).  Ironically, it is the Renovator Defendants who urge the Court to apply Maryland common law to the plaintiffs' negligence claim.  <u>See</u> Renovator Defs.' Reply at 4.

> construction of a building extends to those persons foreseeably subjected to the risk of personal injury because of a latent and unreasonably dangerous condition resulting from that negligence.  Additionally, we hold that where the dangerous condition is discovered before it results in injury, an action in negligence will lie for the recovery of the reasonable cost of correcting the condition.

Id. at 338.  This authority supports the imposition of a duty of care on the Renovator Defendants, since the plaintiffs allege that the Renovator Defendants exposed them to risks of personal injury through their negligence.  See Am. Compl. ¶¶ 20, 25, 73 (alleging that the Renovator Defendants failed to fix problems with the Property's electrical system that created a "fire hazard," failed to remove "asbestos" from the Property, and otherwise created "hazardous conditions" through their negligence).  The plaintiffs further allege that they incurred costs as a result of correcting these dangerous conditions.  See id. ¶ 24.

In short, because the amended complaint plausibly asserts that the Renovator Defendants owed a duty of care to the plaintiffs, the Court must deny the Renovator Defendants' motion to dismiss as to the plaintiffs' negligence claim.

### IV.  CONCLUSION

For the foregoing reasons, the Court denies Collins' motion to dismiss, grants in part and denies in part B&C's motion to dismiss, and grants in part and denies in part the Renovator Defendants' motion to dismiss.

**SO ORDERED** this 28th day of November, 2012.[8]

REGGIE B. WALTON
United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.