**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                    )
DAVID L. JEFFERSON and              )
NAIMA A. JEFFERSON,                 )
                                    )
        Plaintiffs,                 )
                                    )
        v.                          )        Civil Action No. 12-239 (RBW)
                                    )
MARK NATHAN COLLINS, et al.,        )
                                    )
        Defendants.                 )
_____)

<u>**MEMORANDUM OPINION**</u>

The plaintiffs, David L. Jefferson and Naima A. Jefferson, bring this civil action against

Mark Nathan Collins ("Collins") and B&C Homebuyers, LLC ("B&C Homebuyers"),

collectively the "Seller Defendants," and Victor O. Villalobos ("Villalobos") and VB Platinum

Tile & Carpet, Inc. <u>dba</u> Platinum Builders, Inc. ("Platinum Builders"), collectively the

"Renovation Defendants," asserting claims for breach of contract, fraud, violation of the District

of Columbia's Consumer Protection Procedures Act ("CPPA"), D.C. Code Ann. §§ 28-3901 to

-3911 (West 2001), and other violations of District of Columbia ("District") law arising out of

the plaintiffs' purchase of residential real estate located at 1121 Kalmia Road, N.W.,

Washington, D.C. (the "Property"). <u>See generally</u> Third Amended Complaint ("Third Am.

Compl.") ¶¶ 8, 55–95. Currently pending before the Court are: (1) the Plaintiffs' Motion for

Partial Summary Judgment ("Pls.' Mot."); (2) Defendants B&C Homebuyers and Mark Nathan

Collins' Motion for Partial Summary Judgment ("Seller Defs.' Mot."); (3) Defendants Victor O.

Villalobos's and VB Platinum Tile & Carpet, Inc.'s Motion for Partial Summary Judgment on

Plaintiffs' Request for Veil Piercing/Alter Ego Relief ("Renovation Defs.' Alter Ego Mot."); (4)

Defendants' Victor Villalobos's and VB Platinum Tile & Carpet's Motion for Summary Judgment on Count VII (Negligence) of Plaintiffs' Third Amended Complaint ("Renovation Defs.' Negligence Mot."); and (5) Defendants Victor O. Villalobos's and VB Platinum Tile & Carpet, Inc.'s Motion for Partial Summary Judgment on CPPA Claim ("Renovation Defs.' CPPA Mot.").  Upon consideration of the parties' submissions, the Court will deny the plaintiffs' partial motion for summary judgment, grant in part and deny in part the Seller Defendants' partial motion for summary judgment, deny the Renovation Defendants' negligence and alter ego motions, and grant the Renovation Defendants' CPPA motion.[1]

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Partial Summary Judgment ("Pls.' Mem."); (2) the plaintiffs' Statement of Material Facts as to Which There Is No Genuine Issue ("Pls.' Facts"), which is incorporated into the plaintiffs' memorandum in support of their partial summary judgment motion; (3) the Renovation Defendants' Response to Plaintiffs' Motion for Summary Judgment ("Renovation Defs.' Opp'n to Pls.' Mot."); (4) Villalobos and VB Platinum's Responses to Statement of Material Facts as to Which Plaintiff[s] Assert[] There is No Genuine Dispute ("Renovation Defs.' Resp. to Pls.' Facts"); (5) the Plaintiffs' Reply to Defendants' Villalobos and VB Platinum's Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Pls.' Reply to Renovation Defs.' Opp'n"); (6) the Memorandum of Points and Authorities in Support of Defendants Victor O. Villalobos's and VB Platinum Tile & Carpet, Inc.'s Motion for Summary Judgment on Plaintiffs' Request for Veil Piercing/Alter Ego Relief ("Renovation Defs.' Alter Ego Mem."); (7) Defendants' Victor O. Villalobos's and VB Platinum Tile & Carpet, Inc.'s Rule 7(h) Statement of Material Facts as to Which There Is No Genuine Dispute ("Renovation Defs.' Alter Ego Facts"); (8) the Memorandum of Points and Authorities in Support of Defendants' Victor O. Villalobos's and VB Platinum Tile & Carpet, Inc.'s Motion for Partial Summary Judgment on CPPA Claim ("Renovation Defs.' CPPA Mem."); (9) Defendants' Victor O. Villalobos's and VB Platinum Tile & Carpet, Inc.'s Rule 7(h) Statement of Material Facts as to Which There Is No Genuine Dispute ("Renovation Defs.' CPPA Facts"); (10) Defendants Victor Villalobos's and VB Platinum Tile & Carpet's Memorandum of Points and Authorities in Support of Their Motion for Summary Judgment on Count VII (Negligence) of Plaintiffs' Third Amended Complaint ("Renovation Defs.' Negligence Mem."); (11) Defendants' Victor O. Villalobos's and VB Platinum Tile & Carpet, Inc.'s Rule 7(h) Statement of Material Facts as to Which There is No Genuine Dispute ("Renovation Defs.' Negligence Facts"); (12) the Plaintiffs' Opposition to Defendants' Villalobos and VB Platinum's Motions for Summary Judgment and Partial Summary Judgment ("Pls' Opp'n to Renovation Defs.' Mots."); (13) the Plaintiffs' Combined Opposition to Defendants' Victor O. Villalobos' and VB Platinum Tile & Carpet, Inc.'s Statement of Alleged Material Facts [] ("Pls.' Resp. to Renovation Defs.' Facts"); (14) VB Platinum and Victor Villalobos' Reply in Support of Their Motion for Summary Judgment on Veil Piercing ("Renovation Defs.' Alter Ego Reply"); (15) VB Platinum and Victor Villalobos' Reply in Support of Their Motion for Summary Judgment on [CPPA] Claims ("Renovation Defs.' CPPA Reply"); (16) VB Platinum and Victor Villalobos' Reply in Support of Their Motion for Partial Summary Judgment on Plaintiffs' Negligence Claim ("Renovation Defs.' Negligence Reply"); (17) the Seller Defendants' Memorandum of Points and Authorities ("Seller Defs.' Mem."); (18) the Seller Defendants' Statement of Material Facts of Which There Is No Genuine Dispute ("Seller Defs.' Facts"); (19) the Plaintiffs' Opposition to Defendants B&C Homebuyers' and Mark Nathan Collins' Motion for Partial Summary Judgment ("Pls.' Opp'n to Seller Defs.' Mot."); (20) the Plaintiffs' Opposition to Defendants Mark Collins' and B&C Homebuyers, LLC's Statement of Alleged Material Facts [] ("Pls.' Resp. to Seller Defs.' Facts"); and (21) Defendants B&C Homebuyers and Mark Nathan Collins' Reply to Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment ("Seller Defs.' Reply").

# I.     FACTUAL BACKGROUND

Although the Court will address additional facts relevant to each of the pending motions in greater detail below, see infra Part III, an overview of the parties' dispute is helpful to frame the issues presented for resolution by the Court.  B&C Homebuyers is a Virginia limited liability company with its principal office in Fairfax, Virginia, which at the time of the events in issue, regularly conducted business in the District of Columbia.  Pls.' Facts ¶¶ 5–6; Seller Defs.' Resp. to Pls.' Facts ¶¶ 5–6.   Defendant Collins and a non-party named Adam Brown ("Brown") are B&C Homebuyers' principals.  Pls.' Facts ¶ 6; Seller Defs.' Resp. to Pls.' Facts ¶ 6.  In December 2010, B&C Homebuyers purchased the Property from a non-party to this dispute.  Pls.' Facts ¶ 16; Seller Defs.' Resp. to Pls.' Facts ¶ 16.  During the course of executing the purchase, the prior owner of the Property disclosed the existence of "some plumbing damage" resulting from the prior owner winterizing the property.  Pls.' Facts ¶¶ 17–18; Seller Defs.' Resp. to Pls.' Facts ¶¶ 17–18.  The Seller Defendants executed a waiver and release acknowledging the Property's condition and accepting the Property "as is."  Pls.' Facts ¶ 19; Seller Defs.' Resp. to Pls.' Facts ¶ 17.

The Seller Defendants then hired Platinum Builders in February 2011 to renovate the Property.  Pls.' Facts ¶ 22; Seller Defs.' Resp. to Pls.' Facts ¶ 19.  Platinum Builders is a corporation organized under the laws of Florida, registered as a foreign corporation in Virginia, and has its principal office in Bristow, Virginia.  Pls.' Facts ¶ 9; Renovation Defs.' Resp. to Pls.' Facts ¶ 9.  Defendant Villalobos and his wife, Maria Betalleluez, are Platinum Builders' principals.  Pls.' Facts ¶ 10; Renovation Defs.' Resp. to Pls.' Facts ¶ 10.  Platinum Builders had a contractor license, and Villalobos had a home improvement salesperson license issued by the District.  Pls.' Facts ¶ 15.  Platinum Builders had previously worked with Collins on other

renovation and remodeling projects on residential real estate in the District.  Pls.' Facts ¶ 12;

Renovation Defs.' Facts ¶ 12.  The contract for the renovation of the Property included the

performance of structural, plumbing, and electrical work.  See Renovation Defs.' Alter Ego

Mot., Exhibit ("Ex.") A at B&C/Collins 000405–06 ("contract" dated February 2011 listing

within the "scope of work," inter alia, "redesign[ing] the top level to fit [two] full bathrooms and

[three] bedrooms," "remov[ing a] wall between [the] kitchen and dining room," and adding

recessed lighting on the main and basement levels of the Property).  However, only a demolition

permit was acquired in connection with the renovation of the Property.  See Pls.' Facts ¶ 24;

Renovation Defs.' Resp. to Pls.' Facts ¶ 24.  Platinum Builders hired as a subcontractor Ruben

Zegarra ("Zegarra"), an individual "who lacked home improvement, electrical, plumbing, and

mechanical licenses in the District," to perform some of the renovation work.  Pls.' Facts ¶ 37;

Renovation Defs.' Resp. to Pls.' Facts ¶ 37.  Zegarra later sued the Renovation Defendants in a

separate proceeding in the Superior Court of the District of Columbia arising out of his work on

the Property.  See Pls.' Opp'n to Renovation Defs.' Mots., Ex. 2 at J00003142 (Complaint,

Zegarra v. Platinum Builders, Inc. & Victor Villalobos, No. 3875-11 (May 16, 2011) (the

"Zegarra proceeding")).

        In April 2011, prior to the completion of the renovation of the Property, B&C

Homebuyers signed a Seller's Disclosure Statement.  See Pls.' Mot., Ex. 9 (Seller's Disclosure

Statement ("Disclosure Statement")) at J00000022–28.  The Disclosure Statement indicated that

B&C Homebuyers did not have actual knowledge of any water leaks into the basement of the

Property; any plumbing, structural, or electrical defects; or the presence of asbestos on the

Property.  Id., Ex. 9 (Disclosure Statement) at J00000025–27.  Two months later, in June 2011,

the Seller Defendants placed the Property on the market for sale.  Pls.' Facts ¶ 51; Seller Defs.'

Resp. to Pls.' Facts ¶ 48.  The plaintiffs visited the Property in July 2011 and subsequently

entered into a contract to purchase the Property from the Seller Defendants.  Pls.' Facts ¶ 52;

Seller Defs.' Resp. to Pls.' Facts ¶ 49; Pls.' Mot., Ex. 9 (Regional Sales Contract) at J00000837–

46.  Although the parties dispute whether the April 2011 Disclosure Statement was part of the

contract for the sale of the Property, see Seller Defs.' Resp. to Pls.' Facts ¶¶ 49–50, the

Disclosure Statement was nonetheless provided to the plaintiffs in connection with the sale of the

Property, Pls.' Mot., Ex. 9 (Disclosure Statement) at J00000028 (signature page showing the

plaintiffs' signatures dated July 25, 2011).

On July 31, 2011, the plaintiffs had the Property inspected by a home inspection

company, Pls.' Facts ¶ 54; Seller Defs.' Resp. to Pls.' Facts  ¶ 51, and on or around August 3,

2011, an addendum was added to the Regional Sales Contract requiring the Seller Defendants to

make several repairs, including repairs of the Property's electrical system, see Pls.' Facts ¶ 55;

Seller Defs.' Resp. to Pls.' Facts ¶ 52.  The record indicates that a company named Green's

Electric was hired to perform the electrical repairs.  See Pls.' Facts ¶¶ 56–58; Seller Defs.' Resp.

to Pls.' Facts ¶¶ 53–55.  On August 17, 2011, plaintiff David Jefferson was informed by

telephone that B&C Homebuyers had agreed to install a "heavy up" on the Property's electrical

system and to "address the remaining electrical problems."  Pls.' Facts ¶ 60; Seller Defs.' Resp.

to Pls.' Facts ¶ 57.  Settlement for the purchase of the Property occurred that same day.  Pls.'

Facts ¶ 61.  It is disputed whether the repairs to the Property's electrical system were completed.

See Seller Defs.' Resp. to Pls.' Facts ¶¶ 58, 60 (asserting that the "heavy up" was completed).

The plaintiffs allege that they subsequently discovered several defects in the Property,

including the presence of asbestos, electrical and HVAC problems, and defects in the Property's

plumbing that resulted in sewer gases escaping into the bathroom.  Third Am. Compl. ¶¶ 35–38,

40.  The plaintiffs also allege that the defendants renovated the Property without obtaining all required construction permits from the District.  Id. ¶¶ 51–52.  As a result of the alleged defects, the plaintiffs have been required to expend "significant sums" of money to repair the defects.  Id. ¶ 42.

## II.    STANDARD OF REVIEW

On a motion for summary judgment, Federal Rule of Civil Procedure 56 requires the Court to find that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment must be granted against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  A material fact is one that "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  And, "a dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006) (quoting Anderson, 477 U.S. at 248).  The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.

In opposing a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Accordingly, the nonmoving party may not rely on "the mere allegations or denials of his pleadings" but "must set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 248 (internal quotation marks omitted).  In ruling on a motion for summary judgment, the court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility

determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S.

133, 150 (2000) (internal citations omitted); see also Barnett v. PA Consulting Grp., Inc., 715

F.3d 354, 358 (D.C. Cir. 2013) (stating that weighing the evidence and making credibility

determinations "are jury functions, not those of a judge at summary judgment").

## III.   ANALYSIS

### A.   The Plaintiffs' Claims Against the Renovation Defendants

#### 1.   The Plaintiffs' CPPA Claim (Count V)

The Renovation Defendants' assert that the plaintiffs' CPPA claim against them must fail

because no consumer-merchant relationship existed between the plaintiffs and Platinum

Builders.  Renovation Defs.' CPPA Mem. at 7–11.  It is well-settled that "[d]espite its broad

reach, the CPPA applies only to consumer-merchant relationships." Busby v. Capital One, N.A.,

772 F. Supp. 2d 268, 279 (D.D.C. 2011) (citing Snowder v. District of Columbia, 949 A.2d 590,

599 (D.C. 2008)); see also Ford v. ChartOne, Inc., 908 A.2d 72, 81 (D.C. 2006) ("[A] valid

claim for relief under the CPPA must originate out of a consumer transaction.").

The plaintiffs rely on Adam A. Weschler & Son, Inc. v. Klank, 561 A.2d 1003 (1989),

and Howard v. Riggs National Bank, 432 A.2d 701 (D.C. 1981), in support of their contention

that because the Renovation Defendants were "connected to the supply side" of the transaction at

issue (the sale of the Property), the plaintiffs were indeed in a consumer-merchant relationship

with the Renovation Defendants.  Pls.' Opp'n to Renovation Defs.' Mots. at 18–19.  But the

District of Columbia Court of Appeal in Klank, relying on the analysis of a former member of

this Court in Independent Communications Network, Inc. v. MCI Telecommunications Corp.,

657 F. Supp. 785 (D.D.C. 1987), clarified that "[t]ransactions along the distribution chain that do

not involve the ultimate retail customer are not 'consumer transactions' that the [CPPA] seeks to

reach.  Rather, it is the ultimate retail transaction between the final distributor and the individual

member of the consuming public that the [CPPA] covers."  561 A.2d at 1005 (emphasis added).

The record shows that the Renovation Defendants had no retail relationship with the

plaintiffs; instead, the Renovation Defendants contracted to do business with the Seller

Defendants in February 2011, five months before the plaintiffs purchased the Property.  See Pls.'

Facts ¶¶ 22, 52.  Thus, while the Renovation Defendants contract with the Seller Defendants may

be a "transaction[] along the distribution chain," it is not one that "involve[s] the ultimate retail

customer," Klank, 561 A.2d at 1005, and accordingly, the plaintiffs were not in a consumer-

merchant relationship with the Renovation Defendants.  Cf. Cronin v. Adam A. Weschler & Son,

Inc., 904 F. Supp. 2d 37, 44 (D.D.C. 2012) ("As [the p]laintiff . . . never obtained or sought to

obtain any goods or services from [the merchant], she was not a 'consumer' for purposes of the

CPPA; as such, she cannot allege a claim under the statute.").  The Court therefore grants the

Renovation Defendants' motion for summary judgment on the CPPA claim and denies the

plaintiffs' motion for partial summary judgment as to their CPPA claim against Platinum

Builders.

### 2.     The Plaintiffs' Negligence Claim (Count VII)

A claim of negligence under District of Columbia law requires a plaintiff to establish that

"(1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and

(3) the breach of duty proximately caused damage to the plaintiff."  Haynesworth v. D.H.

Stevens Co., 654 A.2d 1095, 1098 (D.C. 1994).  "[T]he tort must exist in its own right

independent of [a] contract, and any duty upon which the tort is based must flow from

considerations other than [a] contractual relationship.  The tort must stand as a tort even if the

contractual relationship did not exist."  Choharis v. State Farm Fire Ins. & Cas. Co., 961 A.2d

1080, 1089 (D.C. 2008).  Furthermore, the economic loss doctrine, which has been adopted by the District, bars a plaintiff from recovering for purely economic losses under a theory of negligence.  See Aguilar v. RP MRP Wash. Harbour LLC, 98 A.3d 979, 982 (D.C. 2014) (adopting the economic loss doctrine).

The Renovation Defendants argue that the plaintiffs' negligence claim fails because the plaintiffs seek purely economic losses based upon the Renovation Defendants' alleged failure to adequately perform their contract with the Seller Defendants and also because the plaintiffs are not in privity of contract.  See Renovation Defs.' Negligence Mem. at 4–7.  In opposition, the plaintiffs rely on authority supporting the proposition that the economic loss doctrine does not bar their negligence claim where it is foreseeable that the defendant's negligent performance on the contract would result in harm to a third party to the contract.  Pls.' Opp'n to Renovation Defs.' Mots. at 15–26 (citing, inter alia, Council of Co-Owners Atlantis Condominium, Inc. v. Whiting-Turner Contracting Co., 517 A.2d 336 (Md. 1986)).

In Aguilar, the District of Columbia Court of Appeal joined a majority of states that have adopted the economic loss rule, see 98 A.3d at 983, holding that "[t]he economic loss doctrine in the District of Columbia bars recovery of purely economic losses in negligence, subject to only one limited exception where a special relationship exists," id. at 985–86.  Likely due to the recent issuance of the Aguilar decision in 2014, the Court has found no helpful guidance in District of Columbia case law following the issuance of Aguilar to determine whether District of Columbia courts would find that such a "special relationship" exists between the plaintiffs and the Renovation Defendants.  In addition, the Court has found no District of Columbia cases applying the "special relationship" doctrine in a factual context similar to this case.

At the motion to dismiss stage, the Court previously relied on the Maryland Court of Appeals' decision in Atlantis Condominium in finding that the plaintiffs had sufficiently alleged that the Renovation Defendants owed them a duty of reasonable care.  See Jefferson v. Collins, 905 F. Supp. 2d 269, 292 (D.D.C. 2012) (Walton, J.).  In Atlantis Condominium, a case analogous to this one, the Maryland Court of Appeals rejected the privity of contract requirement as a bar to a third party's cause of action against the builder and architect of a condominium, concluding instead that

> the determination of whether a duty will be imposed in this type of case should depend upon the risk generated by the negligent conduct, rather than upon the fortuitous circumstance of the nature of the resultant damage.  Where the risk is of death or personal injury, the [negligence] action will lie for recovery of the reasonable cost of correcting the dangerous condition.

517 A.2d at 345.  The Maryland court noted, however, that it was

> the serious nature of the risk that persuade[d it] to recognize the cause of action in the absence of actual injury.  Accordingly, conditions that present a risk to general health, welfare[,] or comfort but fall short of presenting a clear danger of death or personal injury [do] not suffice.  A claim that defective design or construction has produced a drafty condition that may lead to a cold or pneumonia [is] not [] sufficient.

Id. at 345 n.5.

The Maryland Court of Appeals further clarified this standard, stating that courts should "examine both the nature of the damage threatened and the probability of damage occurring to determine if the two, viewed together, exhibit a clear, serious, and unreasonable risk of death or personal injury."  Morris v. Osmose Wood Preserving, 667 A.2d 624, 632 (Md. 1995); see also id. ("[W]e do not ordinarily allow tort claims for purely economic losses.  But when those losses are coupled with a serious risk of death or personal injury resulting from a dangerous condition, we allow recovery in tort to encourage correction of the dangerous condition.").  In the absence

of District of Columbia law on point, the Court is persuaded by the Maryland Court of Appeals' sound reasoning set forth in the <u>Atlantis Condominium</u> and <u>Morris</u> line of cases.

With the foregoing legal principles as its guide, the Court concludes that, in light of the scope of work contracted to be performed by the Renovation Defendants, a duty of reasonable care arose from the probability that the negligent performance of the renovation would pose a serious risk of death or personal injury to the Property's occupants.  Although it appears that more than one document contains the scope of work envisioned for the renovation of the Property, <u>see</u> Renovation Defs.' Resp. to Pls.' Facts ¶ 22; Pls.' Opp'n to Renovation Defs.' Mots., Ex. 19 at B&C/Collins 000405–08, 000514, one of these "contracts" indicates that the Renovation Defendants were engaged to perform significant structural and electrical work, including "redesign[ing] the top level [of the Property] to fit [two] full bathrooms and [three] bedrooms, "[r]emov[ing the] wall between [the] kitchen and dining room," installing "GFI[s] in [the] kitchen and bathrooms," and installing "outlets and switch[e]s by code," Pls.' Opp'n to Renovation Defs.' Mots., Ex. 19 at B&C/Collins 000405.  The negligent performance of these tasks raises a genuine issue of material fact as to whether the risk created by the alleged defective work placed the plaintiffs in serious risk of death or personal injury if the structural work on the Property failed resulting in a structural collapse or if the Property's occupants suffered serious injury or death arising from a fire or electrical shocks due to faulty electrical installation.  Given these risks, the Court concludes that the plaintiffs' negligence claim against the Renovation Defendants is not barred by the economic loss rule.  The Court therefore will deny the Renovation Defendants' motion for summary judgment on Count VII of the Third Amended Complaint.

**B.      The Plaintiffs' Claims Against the Seller Defendants**

      **1.      The Plaintiffs' Breach of Contract (Count I) and Breach of Warranty (Count VI) Claims**

The Seller Defendants seek to limit the plaintiffs' breach of contract and breach of warranty claims to the items specifically delineated in paragraph 7 of the Regional Sales Contract.  See Seller Defs.' Mem. at 42; Pls.' Mot., Ex. 9 (Regional Sales Contract) at J00000838 (provision warrantying that "the existing appliances, heating, cooling, plumbing, electrical systems and equipment, and smoke and heat detectors (as required) will be in normal working order . . . .").  In their opposition, the plaintiffs contend that the parties' contract included the Disclosure Statement, and that their breach of contract and warranty claims extend to that document as well.  Pls.' Opp'n to Seller Defs.' Mot. at 30–31.  Whether the Disclosure Statement was intended to form a part of the contract for the sale of the Property is therefore disputed by the parties.  See Pls.' Facts ¶ 53; Seller Defs.' Resp. to Pls.' Facts ¶¶ 49–50.

The parties' dispute regarding Counts I and IV turns on the question of whether the Regional Sales Contract unambiguously incorporates the Disclosure Statement.  Akassy v. William Penn Apartments, LP, 891 A.2d 291, 299 (D.C. 2006) ("Whether a contract is ambiguous is a question of law . . . .").  The plaintiffs cite a provision of the Regional Sales Contract which indicates that a "Property Disclosure or Disclaimer" form, "if ratified and attached," was "made part of this Contract."  Pls.' Mot., Ex. 9 (Regional Sales Contract) at J00000845, ¶ 32.  In contrast, the Seller Defendants rely on language in the Disclosure Statement stating that "it is not intended to be a part of any contract between Buyer and Seller."  Pls.' Mot., Ex. 9 (Disclosure Statement) at J00000024.

The Court concludes that the Regional Sales Contract is ambiguous on its face regarding whether the referenced "Property Discloser or Disclaimer" form is equivalent to the Disclosure

Statement, and therefore, a factual issue exists as to whether the Disclosure Statement was made part of the Regional Sales Contract.  See Strauss v. NewMarket Global Consulting Grp., 5 A.3d 1027 (D.C. 2010) ("[T]he determination of what the parties consider to be the material terms of their agreement is a question of fact.").  Accordingly, the Court will deny the Seller Defendants' summary judgment motion and permit the plaintiffs to pursue this claim at trial.

**2.   The Plaintiffs' Implied Covenant of Good Faith and Fair Dealing Claim (Count II)**

"'[I]n every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing.'"  Himmelstein v. Comcast of the Dist., LLC, 908 F. Supp. 2d 49, 53 (D.D.C. 2012) (quoting Hais v. Smith, 547 A.2d 986, 987 (D.C. 1988)).  "A party may be liable for a breach of this duty if it 'evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party.'"  Id. (quoting Paul v. Howard Univ., 754 A.2d 297, 310 (D.C. 2000)).  Here, the Third Amended Complaint alleges that the Seller Defendants breached the implied covenant of good faith and fair dealing by

> failing to complete agreed upon repairs, failing to disclose the Property had been illegally renovated, failing to disclose known damages, defects[,] and hazards in the [P]roperty, and otherwise willfully rendering imperfect performance of the contract.

Third Am. Compl. ¶ 65.

The plaintiffs seek summary judgment in their favor on their implied covenant claim based on disclosures made prior to the completion of the renovation regarding the condition of the Property in the Disclosure Statement, which they assert was incorporated into the Property

Sale Contract by paragraph 32 of the Property Sale Contract.[2]  See Pls.' Mem. at 36; Pls.' Mot.,

Ex. 9 (Regional Sales Contract), ¶ 32 (listing the "forms, if ratified and attached" that "are made

a part of this Contract").  As noted above, the Seller Defendants dispute whether the Disclosure

Statement was part of the Contract, contending that "[t]he disclosure statement specifically

provides that it is not a part of the contract," Seller Defs.' Resp. to Pls.' Facts ¶ 50; see also Pls.'

Mot., Ex. 9 (Disclosure Statement) at J00000024 ("This information is a disclosure only and is

not intended to be a part of any contract between Buyer and Seller."), and argue that in any

event, they have "set forth numerous facts that they complied with the contract," Seller Defs.'

Opp'n to Pls.' Mot. at 30.

The parties' contentions raise the threshold question of whether, as a matter of law, the

representations in the Disclosure Statement can form the basis of a claim for breach of the

implied covenant of good faith and fair dealing.  As another member of this Court noted in

Regan v. Spicer HB, LLC, 134 F. Supp. 3d 21 (D.D.C. 2015), a case involving a disclosure

statement associated with the sale of real estate:

> since the Disclosure Statement was signed during negotiations over the contract,
> prior to the parties' closing on the sale, [the] Defendants' completion of that
> statement—regardless of their actual knowledge about the state of the property—
> cannot be the basis for a breach of an implied covenant of good faith and fair dealing
> regarding the Sales Contract.

Id. at 35.  The Regan court explained that "[u]ltimately, the relevant question in a claim

concerning the duty of good faith and fair dealing is whether a party's actions 'destroy[] or

injur[e] the right of the other party to receive the fruits of the contract.'"  Id. (second and third

---

[2] The plaintiffs' motion purports to seek summary judgment on their breach of contract claim (Count I of the Third Amended Complaint), but their argument in support of the motion focuses on the implied covenant of good faith and fair dealing, a separate cause of action alleged in the Third Amended Complaint.  See generally Pls.' Mem. at 36 The Court, therefore, deems the plaintiff's motion as seeking summary judgment in their favor on their claim for breach of the implied covenant of good faith and fair dealing (Count II) only.

alterations in original) (quoting <u>Hais</u>, 547 A.2d at 987).  Thus, a "breach of the duty of good faith and fair dealing must necessarily arise out of the performance or enforcement of the contract, not out of the contract negotiations."  <u>C&E Servs., Inc. v. Ashland, Inc.</u>, 601 F. Supp. 2d 262, 275 (D.D.C. 2009).

In <u>Regan</u>, the court dismissed the plaintiff's implied covenant claims based on a seller disclosure statement that was signed before the parties' closed the real estate transaction.  134 F. Supp. 3d at 35.  The relevant and undisputed series of events here is even more attenuated than in <u>Regan</u>: the Seller Defendants signed the Disclosure Statement on April 2011, Pls.' Facts ¶ 46; Seller Defs.' Resp. to Pls.' Facts ¶ 43, approximately three months before the Property was placed on the market for sale, Pls.' Facts ¶ 51; Seller Defs.' Resp. to Pls.' Facts ¶ 48 (not disputing when the Property was offered for sale), and four months before the transaction settled in August 2011, Pls.' Facts ¶ 61; <u>see</u> Seller Defs.' Mem. ¶ 58 (not disputing the date of settlement).  Given these undisputed facts, the Court concludes that the plaintiffs' implied covenant claim cannot prevail, to the extent it relies on the representations in the Disclosure Statement.  Because the plaintiffs seek summary judgment in their favor on the implied covenant claim based solely upon the Disclosure Statement, <u>see</u> Pls.' Mem. at 36, the Court will deny the plaintiffs' motion with respect to this claim.

In response to the plaintiff's allegation that the Seller Defendants did not complete agreed-upon repairs to the Property, <u>see</u> Third Am. Compl. ¶ 65, the Seller Defendants assert that the record shows that the "repairs were made," Sellers Defs.' Mem. at 29.  There is a dispute, however, as to whether the Seller Defendants did in fact complete all agreed-upon repairs.  <u>See</u> Pls.' Facts ¶ 55 (the plaintiffs' request for repairs); Seller Defs.' Resp. to Pls.' Facts ¶¶ 58, 60 (asserting that the agreed-upon repairs were completed).  The Court will therefore permit this

aspect of the plaintiffs' implied covenant claim to proceed to trial and deny the Seller

Defendants' motion with respect to the repairs referenced by the plaintiffs.  And, because the

Seller Defendants have also failed to make an argument showing their entitlement to summary

judgment on any of the other bases of the plaintiffs' implied covenant claim beyond the "agreed

upon repairs," <u>see</u> Third Am. Compl. ¶ 65, the Court denies the Seller Defendants' motion with

respect to this claim, except, as noted above, to the extent the plaintiffs' implied covenant claim

is based upon the representations in the Disclosure Statement.

### 3.      The Plaintiffs' Fraud Claim (Count III)

The Seller Defendants seek summary judgment in their favor on the plaintiffs' fraud

claim, arguing that there is no evidence that they had "actual knowledge" of the defects at issue

when they signed the Disclosure Statement.  <u>See</u> Seller Defs.' Mem. at 30–38.  To prevail on

their fraud claim against the Seller Defendants, the plaintiffs must establish: "(1) a false

representation, (2) in reference to [a] material fact, (3) made with knowledge of its falsity, (4)

with the intent to deceive, and (5) action is taken in reliance upon the representation."  <u>Va.</u>

<u>Academy of Clinical Psychologists v. Grp. Hosp. & Med. Servs., Inc.</u>, 878 A.2d 1226, 1233

(D.C. 2005).

As noted above, the Seller Defendants' main challenge is to the plaintiffs' allegation that

they had "actual knowledge" of certain defects prior to signing the Disclosure Statement.  Seller

Defs.' Mem. at 30; <u>see also</u> Third Am. Compl. ¶ 70.  Although, under District of Columbia law,

the "knowledge" prong may be satisfied if a defendant "ma[kes] a false representation recklessly

without knowing whether or not" the defect exists, <u>Remeikis v. Boss & Phelps, Inc.</u>, 419 A.2d

986, 990 (D.C. 1980) (emphasis added), the Court cannot disregard the fact that the plaintiffs

base their fraud claim in their Third Amended Complaint on the definitive allegation that the

Seller Defendants had <u>actual knowledge</u> that their statements or omissions were false.  <u>See, e.g.</u>,

<u>Sloan v. Urban Title Servs., Inc.</u>, 689 F. Supp. 2d 94, 114 (D.D.C. 2010) (stating that the plaintiff

could not, through a brief in opposition to a motion for summary judgment, pursue her breach of

contract claim under an intended beneficiary claim that was "directly at odds" with her

complaint, which was premised on the allegation that the plaintiff herself had entered into a

contract with the defendant).  The Court's analysis will thus be limited to the alleged basis for

relief asserted in the Third Amended Complaint.

### a.      Water Damage in the Basement

The Seller Defendants assert that there is no genuine issue of material fact as to whether

they had actual knowledge of a water leak or water damage to the Property prior to its sale to the

plaintiffs.  Seller Defs.' Mem. at 31.  Upon a review of the record, the Court agrees.  As support

for their position, the plaintiffs first rely on Platinum Builders' testimony that during the

renovation, a water leak occurred in the basement requiring Villalobos to "replace the . . . carpet

pad because [it] was completely wet" and that he had to "rent a blower to dry . . . it."  Pls.'

Opp'n to Seller Defs.' Mem., Ex. 11 (Platinum Builders Dep.) at 74:7–75:19.  Villalobos also

testified, during the <u>Zegarra</u> proceeding, that the "water in the basement" "was a big big

problem" and that it was not "just easy to make it whole."  <u>Id.</u>, Ex. 15 (Transcript of July 9, 2012

Hearing in <u>Zegarra</u> proceeding) at 93:21–94:5.  But nothing in the testimony relied upon by the

plaintiffs indicates that Villalobos ever notified the Seller Defendants about the water leak.

Further, nothing in the Seller Defendants' deposition testimony relied upon by the plaintiffs

indicates that Villalobos notified them about the leak.  <u>See id.</u>, Ex. 1 (B&C Homebuyers Dep.) at

180:17–183:14 (no reference to Brown being aware of a water leak causing damage in the

basement).

The plaintiffs also contend that a jury could infer, from an April 2011 water bill, that a "substantial leak [discharged water] into the basement that resulted in water damage that [the Seller Defendants] knew about."  Pls.' Opp'n to Seller Defs.' Mot. at 16.  The Court finds that rather than a reasonable inference, the conclusion the plaintiffs would be asking a jury to reach would require speculation, as the evidence they cite raises only a "metaphysical" possibility that their position has merit, <u>Matsushita</u>, 475 U.S. at 586, which does not create a genuine dispute of fact.  In addition, the plaintiffs' reliance on the projected testimony that would be offered at trial of an individual who purportedly "observed the water damage with his own eyes and brought it to the attention of the [p]laintiffs," Pls.' Opp'n to Seller Defs.' Mot. at 16, is unavailing.  Even if this representation regarding a potential witness's projected testimony were sufficient to satisfy the plaintiffs' burden in opposing the Seller Defendants' motion, this testimony would not show that the Seller Defendants had actual knowledge about a water leak or water damage in the basement.  Given the plaintiffs' failure to identify facts raising a genuine dispute of material fact regarding the Seller Defendants' actual knowledge of a leak and water damage in the basement, the Court will grant the Seller Defendants' motion with respect to this aspect of the plaintiffs' negligence claim.

### b.      Prior Plumbing Damage

In contrast to the insufficiency of the plaintiffs' evidence regarding the Seller Defendants' actual knowledge of a water leak and water damage in the Property's basement, the record does contain evidence that raises a genuine dispute of material fact regarding whether the Seller Defendants actually knew about prior plumbing damage before signing the Disclosure Statement.  Most notably, the prior owner disclosed, during the course of the December 2010 sale of the Property to B&C Homebuyers, that "upon the [prior] seller winterizing the [P]roperty

there [was] some plumbing damage." Pls.' Opp'n to Seller Defs.' Mot., Ex. 6 (Seller's Counter-Proposal Terms) at B&C/Collins 000644. The page of the prior seller's disclosure on which this statement appears contains signatures for both the "buyer," dated in December 2010, the "seller," dated in January 2011, and both the name "Mark Collins" and what appears to be a ten-digit phone number are printed at the top of the page. See id. Moreover, none of the various contracts that provided for the performance of work by the Renovation Defendants address repair of plumbing damage, Pls.' Opp'n to Renovation Defs.' Mots., Ex. 19 at B&C/Collins 000405–08, 000514, and Collins testified that he did not "recall" the plumbing damage or "recall" "investigat[ing] to see what the damage was," id., Ex. 1 (B&C Homebuyers Dep.) at 85:12–15. These documents create a genuine dispute of material fact as to whether the Seller Defendant actually knew about prior plumbing damage, a factual question that must be resolved by a jury. The Court will therefore deny the Seller Defendants' motion with respect to the alleged misrepresentations about the condition of the Property's plumbing.

### c.    Asbestos

The Seller Defendants contend that the record is devoid of any evidence that they had actual knowledge of the presence of asbestos tile in the Property's basement. Seller Defs.' Mem. at 32–33. In response, the plaintiffs identify several facts from which, they contend, a jury could reasonably infer that the Seller Defendants must have known about the asbestos tile in the basement because the Seller Defendants viewed the Property and only had to look at the tile in the basement to identify it as asbestos tile. See Pls.' Opp'n to Seller Defs.' Mot. at 20–21. Upon reviewing the record, the Court concludes that the evidence offered by the plaintiffs, while circumstantial, is sufficient to create a genuine issue of material fact for trial. See, e.g., Attakora v. District of Columbia, 81 F. Supp. 3d 82, 84–85 (D.D.C. 2015) (denying summary judgment

where, although no direct evidence of discrimination was offered, the circumstantial evidence created a "close case" from which "reasonable triers of fact could draw 'divergent yet justifiable inferences' from the evidence provided." (quoting Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009))).  Specifically, the record contains evidence that Collins was licensed as a roofing and residential contractor in Florida, and that obtaining these licenses required Collins to pass a test and participate in continuing education.  Pls.' Opp'n to Seller Defs.' Mot., Ex. 3 (Collins Dep.) at 23:6–22, 25:1–18, 26:13–27:12.  The plaintiffs have also identified a document listing knowledge about asbestos as among the "safety standards and practices" subjects that appear to be part of Florida's construction licensing tests.  See id., Ex. 4 (Residential Contractor's Project Management Examination Content Information) at 2 (listing on the tests "knowledge of asbestos" under the heading "Other safety standards and practices").  Because these facts present a "close case" as to whether the Seller Defendants had actual knowledge about the presence of asbestos tile in the basement, the Court will deny their motion for summary judgment on this aspect of the plaintiffs' fraud claim.

### d.    Structural Defects

The plaintiffs assert, contrary to the Seller Defendants' contention, that the record contains sufficient evidence to raise a genuine issue of material fact regarding the Seller Defendants' actual knowledge about structural defects at the Property.  Pls.' Opp'n to Seller Defs.' Mot. at 21–22.  The Court's review of the portions of the record cited by the plaintiffs does not reveal a genuine dispute of material fact on this issue; to the contrary, the testimony cited by the plaintiffs, see Pls.' Opp'n to Seller Defs.' Mot. at 21–22 (citing testimony in the Zegarra proceeding and Platinum Builders' deposition in this case) shows only that the Seller Defendants hired the Renovation Defendants to remove archways at the Property, but fails to

show that structural <u>defects</u> existed that the Seller Defendants did not disclose in the Disclosure

Statement or prior to the August 2011 settlement for the plaintiffs' purchase of the Property.

<u>See, e.g.</u>, Pls.' Opp'n, Ex. 14 at VBPLATINUM 000039, 000041 (listing price of "demolition of

two arches" in a "[p]roposal to Platinum Builders Inc."); <u>id.</u>, Ex. 14 (Transcript of July 9, 2012

Hearing) at 25:22–26:3 (testimony by Zegarra that "[o]ne day the owner of the house arrived to

the house and he asked to demolish those arches"); <u>id.</u>, Ex. 11 (Platinum Builders Dep.)

(testimony establishing that Collins asked Platinum Builders to demolish archways at the

Property and that Platinum Builders did not seek the advice of an engineer or architect with

respect to this request).

It does not follow from the mere fact that Collins asked Platinum Builders to remove

archways at the Property, and that the removal of the archways may have been done without

consulting an engineer or architect, that the Seller Defendants possessed actual knowledge about

structural defects that they failed to disclose to the plaintiffs.  And the Court is unpersuaded by

the plaintiffs' contention that the evidence they cite forms the basis for a justifiable inference as

to the Seller Defendants' actual knowledge.  Because the Court finds that no genuine dispute of

material fact exists as to the Seller Defendants' actual knowledge of structural defects at the

Property, the Court will grant the Seller Defendants' motion for summary judgment as to this

component of the plaintiffs' fraud claim.

### e.      Failure to Disclose "Illegal Renovation"

The Seller Defendants contend that, as a matter of law, they had no duty to disclose

whether or not the renovation of the Property was conducted with or without permits and

inspections.  <u>See</u> Seller Defs.' Mem. at 33.  In opposition, the plaintiffs rely primarily on an

opinion by another member of this Court in <u>Jacobson v. Hofgard</u>, ___ F. Supp. 3d ___, 2016

WL 837923 (D.D.C. Mar. 1, 2016), to support their argument that the Seller Defendants committed fraud by advertising the Property for sale as a "renovation" even though they knew that the work was performed by unlicensed contractors and without proper permits and inspections.  Pls.' Opp'n to Seller Defs.' Mem. at 23–25.

In deciding a motion to dismiss under Rule 12(b)(6), the court in Jacobson stated that the "[d]efendants' statement that the Property was 'newly renovated' can form the basis for a fraud claim [because u]nder District of Columbia law, 'a statement literally true' is nonetheless 'actionable if made to create a false impression.'" ___ F. Supp. 3d at ___, 2016 WL 837923, at *4 (quoting Remeikis, 419 A.2d at 989).  The court concluded that by representing that the property in that case was "newly renovated" while omitting that the renovation was performed without proper building permits, the defendants could be liable under a theory of fraudulent misrepresentation.  Id.

The Court agrees with Jacobson's reasoning.  By advertising the Property for sale as a "renovation," the Seller Defendants could be liable for omitting the fact that the renovation was performed without proper permits, that work was performed by unlicensed individuals, and that inspections were not conducted, because these omissions create issues of material fact as to whether a false impression about the condition of the Property was conveyed, i.e., that its condition had been improved by the renovation, which induced the plaintiffs to purchase it. Whether the plaintiff can prove the Seller Defendants' actual knowledge of the permitting and licensing omissions is a matter that must be decided by a jury.  The Seller Defendants' motion for summary judgment is therefore denied as to the question of whether they had a duty to disclose these omissions concerning the renovation of the Property.

### 4.    The Plaintiffs' Negligent Misrepresentation Claim (Count IV)

Under District of Columbia law, "[t]he elements of negligent misrepresentation are similar to the elements of fraud, but do not include the element of fraudulent intent." Rodriguez v. Lab. Corp. of Am. Holdings, 13 F. Supp. 3d 121, 130 (D.D.C. 2014).

> More specifically, a plaintiff alleging negligent misrepresentations or omissions must show "(1) that [the defendant] made a false statement or omitted a fact that he had a duty to disclose; (2) that it involved a material issue; and (3) that [the plaintiff] reasonably relied upon the false statement or omission to his detriment."

Sundberg v. TTR Realty, LLC, 109 A.3d 1123, 1131 (D.C. 2015) (citation omitted).

Each party relies on the same arguments made with respect to the Seller Defendants' motion for summary judgment on the fraud claim to support their respective positions with respect to the negligent misrepresentation claim, and neither side advances any new arguments. See Seller Defs.' Mem. at 38–39; Pls.' Opp'n to Seller Defs.' Mot. at 26. Accordingly, the Court will grant the Seller Defendants' summary judgment motion on the negligent misrepresentation claim with respect to the alleged presence of water in the basement and structural defects, but deny the motion with respect to the alleged prior plumbing damage, asbestos tile, and failure to disclose that the renovation was performed without licenses, permits, and inspections.

### 5.    The Plaintiffs' CPPA Claim (Count V)

In support of their motion for summary judgment on the plaintiffs' CPPA claim, the Seller Defendants argue that the record demonstrates that "the only communication [the Seller D]efendants had with [the] plaintiffs prior to the purchase of the residence was the [D]isclosure [S]tatement" and that the plaintiffs have failed to establish that the Seller Defendants failed to make any disclosure required by District of Columbia Municipal Regulations. Seller Defs.' Mem. at 39–41. Upon a review of the record, the Court disagrees that the only potential basis for

the Seller Defendants' liability under the CPPA is their representations or omissions in the Disclosure Statement.

The CPPA makes it an unlawful trade practice to violate any provision of title 16 of the District of Columbia Municipal Regulations (the "municipal regulations").  D.C. Code Ann. § 28-3904(dd), and title 16 of the municipal regulations incorporates title 12A of the municipal regulations.  See D.C. Mun. Regs. tit. 16, § 3306 (2005).   Title 12A of the municipal regulations requires owners of real property to obtain building, electrical, and other permits when performing certain renovation or remodeling work, and subjects all construction work for which a permit is required to inspection by a code official.  See generally D.C. Mun. Regs. tit. 12A, §§ 105A, 109A (2005).  The record contains evidence raising a genuine issue of material fact as to the Seller Defendants' failure to obtain required licenses, permits, and inspections regarding the renovation of the Property. See, e.g., Pls.' Facts ¶¶ 29–35 (describing the scope of work the Renovation Defendants were engaged to perform and asserting that the work was done without necessary construction permits by individuals who lacked the requisite licenses).  The record also contains evidence raising a genuine dispute of material fact as to whether the Seller Defendants failed to make certain promised repairs prior to settlement on the Property in August 2011.  See, e.g., Pls.' Facts ¶ 60; Seller Defs.' Resp. to Pls.' Facts ¶¶ 57, 58, 60 (disputing whether the "heavy up" installation on the Property's electrical system was completed).  In addition, the record shows that the Seller Defendants provided the plaintiffs with the Disclosure Statement prepared months before the renovation of the Property was completed, a fact that raises a genuine issue of fact as to whether the Seller Defendants misrepresented the actual condition of the Property at the time of the sale.  See Pls.' Mot., Ex. 9 (Disclosure Statement) at J00000028

(signature page on disclosure statement indicating that B&C Homebuyers signed the document in April 2011, whereas the plaintiffs did not sign the document until July 2011).

In light of these facts, the Seller Defendants are not entitled to summary judgment on the plaintiffs' CPPA claim, and the Court therefore denies the Seller Defendants' motion for summary judgment on this claim.[3]  And because genuine questions of material fact exist as to whether the Seller Defendants' alleged misconduct actually violated the CPPA, the Court concludes that the plaintiffs are also not entitled to summary judgment on this claim.  See Parr v. Ebrahimian, 70 F. Supp. 3d 123, 137 (D.D.C. 2014) ("Because the question of whether these representations were misleading and material, or otherwise in violation of the CPPA, are jury questions, Ms. Parr is not entitled to summary judgment on her CPPA claim. Neither, however, are the Rimcor defendants.").  The Court will therefore deny both the plaintiffs and the Seller Defendants' motions for summary judgment on the plaintiffs' CPPA claim.

### 6.    The Plaintiffs' Negligence Claim (Count VII)

Like the Renovation Defendants, the Seller Defendants also contend that the plaintiffs' negligence claim is barred by the economic loss rule.  Seller Defs.' Mem. at 41–42.  As set forth above, the economic loss doctrine bars a plaintiff from recovering for purely economic losses under a theory of negligence, see Aguilar, 98 A.3d at 982, but where the defendant's conduct creates a serious risk of injury of death, "the [negligence] action will lie for recovery of the reasonable cost of correcting the dangerous condition," Atlantis Condominium, 517 A.2d at 345.

---

[3] The Seller Defendants also argue that the plaintiffs' CPPA claim must fail because they have not established that the alleged code violations and misrepresentations caused them any injury.  See Seller Defs.' Mem. at 14 n.7.  This argument is of no moment because "[t]he CPPA . . . [also] provides for recovery where a violation of its provisions does not cause actual harm to the consumer; in such cases, the consumer may be able to collect statutory damages in the amount of $1500 per violation."  Parr, 70 F. Supp. 3d at 135 (citing D.C. Code Ann. § 28-3905(k)(2)(A)).  The Court therefore rejects this assertion.

With respect to the liability of the developer and seller of the property subject to a claim of negligent construction, the Atlantis Condominium court reasoned that

> where, as alleged here, there is a violation of a provision of a building code that was intended as a safety measure, and where that violation has produced death or personal injury, the duty imposed by the [building c]ode is nondelegable. Additionally . . . we hold that it is not necessary in such cases to wait until bodily harm occurs, and an action will lie to recover the cost of repairing a condition created by such a breach of duty where there is shown to exist an actual risk of death or bodily injury as we have described it.

517 A.2d at 348.  The Court finds this reasoning persuasive and therefore rejects the Seller Defendants' argument that the economic loss doctrine bars the plaintiffs' claim.

Furthermore, upon a review of the record, and consistent with the Maryland court's holding in Atlantis Condominium, the Court concludes that a genuine dispute of material fact exists regarding the Seller Defendants' potential liability under a theory of negligence for defects presenting a serious risk of death or injury arising out of the Seller Defendants' alleged violations of applicable municipal regulations.  See Third Am. Compl. ¶ 94 (alleging, among other things, that the Seller Defendants "illegally renovat[ed] the [P]roperty in violation of the [District's] Construction Codes").  As discussed earlier when addressing the negligence claim against the Renovation Defendants, see supra at 10–11, a genuine dispute of material fact exists as to whether the scope of the work the Seller Defendants retained the Renovation Defendants to perform, including removing walls and electrical work, if negligently performed, created a serious risk of death or personal injury.  The Court will therefore deny the Seller Defendants' motion for summary judgment on the plaintiffs' negligence claim.  And because the Seller Defendants make the same argument with respect to the plaintiffs' claim for negligent misrepresentation, the Court will also deny the Seller Defendants' motion for summary judgment on the negligent misrepresentation claim.

**C.      Whether the Plaintiffs May Recover Personally from Defendants Collins and Villalobos**

The defendants assert that the plaintiffs cannot recover any damages from Defendants Collins and Villalobos individually due to the corporate shield provided by B&C Homebuyers and Platinum Builders.  See Sellers' Mem. at 25–28; Renovation Defs.' Alter Ego Mem. at 3–7. "Generally, the corporate entity will be respected, but a party may be permitted to pierce the corporate veil upon proof that there is (1) unity of ownership and interest [between the corporation and shareholders], and (2) use of the corporate form to perpetrate fraud or wrong, or other considerations if justice and equity justify it."  Estate of Raleigh v. Mitchell, 947 A.2d 464, 470 (D.C. 2008) (alteration in original) (quoting Bingham v. Goldberg, Marchesano, Kohlman, Inc., 637 A.2d 81, 93 (D.C. 1994)).  "In determining whether the corporation is the alter ego of its shareholders, the court will consider various factors, such as (1) whether corporate formalities have been disregarded, (2) whether corporate funds and assets have been extensively intermingled with personal assets, (3) inadequate initial capitalization, and (4) fraudulent use of the corporation to protect personal business from the claims of creditors."  Id. at 470–71.  "No single factor controls," Lawlor v. District of Columbia, 758 A.2d 964, 975 (D.C. 2000), and "the factor which predominates will vary in each case," Camacho v. 1440 Rhode Island Ave. Corp., 620 A.2d 242, 249 (D.C. 1993).  "[T]he decision to pierce will be influenced by considerations of who should bear the risk of loss and what degree of legitimacy exists for those claiming the limited liability protection of the corporation."  Id.

In addition, the plaintiffs assert that not only do they seek to pierce the corporate veil of B&C Homebuyers and Platinum Builders, but that they also wish to hold Collins and Villalobos liable, as corporate officers, "for their own personal torts, acts, omissions, and meaningful participation in the purchase, renovation, sale, and subsequent actions or lack thereof."  Pls.'

27

Opp'n to Seller Defs.' Mot. at 4; Pls.' Opp'n to Renovation Defs.' Mots. at 7.  "[T]he legal principles governing the liability of corporate officers for their own tortious acts differ from those applicable to shareholder liability in veil-piercing cases."  Lawlor, 758 A.2d at 974.  In such circumstances, even if no grounds exist to pierce the corporate veil, "[c]orporate officers are 'personally liable for torts which they commit, participate in, or inspire, even though the acts are performed in the name of the corporation.'"  Id. (quoting Vuitch v. Furr, 482 A.2d 811, 821 (D.C. 1984)); see also Perry ex rel. Perry v. Frederick Inv. Corp., 509 F. Supp. 2d 11, 18 (D.D.C. 2007) (setting forth "well-established" law governing corporate officers' personal liability).

The Court having ruled in favor of the Renovation Defendants on the CPPA claim, the plaintiffs' now only have a negligence claim remaining against Villalobos.  See Third Am. Compl. ¶¶ 55–95 (of the plaintiffs' seven counts, only two (Count V (Violation of the [CPPA]) and Count VII (negligence)) are brought against "All Defendants," whereas the remaining counts are brought against the Seller Defendants only).  All of the plaintiffs' claims against Collins, remain, although the implied covenant of good faith and fair dealing, fraud, and negligent misrepresentation claims are now limited in scope accordance with the Court's analysis above. See id.; supra at 12–26.  The Court will analyze the personal liability of Villalobos and Collins in turn.

## 1.    Defendant Villalobos

At the outset, the Court notes that, for several reasons, the Renovation Defendants' motion fails to show that no genuine issue of material fact exists regarding Villalobos' personal liability.  First, their statement of purported undisputed material facts submitted in support of their motion contains facts that do not appear to relate to the elements of the veil piercing or corporate officer doctrines, see generally Renovation Defs.' Alter Ego Facts, and the

memorandum in support of their motion does not elucidate the relevance of the cited facts, <u>see</u> <u>generally</u> Renovation Defs.' Alter Ego Mem.  Second, the Renovation Defendants' arguments in their memorandum submitted in support of their summary judgment motion largely challenges the alleged insufficiency of the allegations set forth in the plaintiffs' Third Amended Complaint, not their proffered undisputed facts.  <u>See</u> Renovation Defs.' Alter Ego Mem. at 4–6 (citing as support for its arguments the allegations in the complaint).  In stark contrast to the insufficiency of the Renovation Defendants' showing, the plaintiffs have established that a genuine issue for trial exists with respect to Villalobos' personal liability.

      a.       **Veil Piercing**

The plaintiffs have identified facts in the record that raise a genuine issue of material fact regarding the first prong of the veil piercing analysis.  It is undisputed that Villalobos, with his wife, were owners and officers of Platinum Builders, a Florida corporation.  Pls.' Facts ¶¶ 9–10; Renovation Defs.' Resp. to Pls.' Facts ¶¶ 9–10.  Moreover, the plaintiffs have identified facts from which a reasonable jury could conclude that Platinum Builders' corporate assets were intermingled with Villalobos' personal assets through Villalobos' use of Platinum Builders' business checking account for personal expenses.  <u>See, e.g.</u>, Pls.' Opp'n to Renovation Defs.' Mots., Ex. 13 (Platinum Builders, Inc. Business Checking Account Statements) at VB000091 & VB000117 (digital media rentals from RedBox, Inc.); VB000092 (purchases from Kay Jewelers and Toys R Us); VB000116 & VB000169 (purchases from Petsmart and Petco); VB000192 (purchase from SeaWorld Parks & Entertainment); <u>see also</u> <u>Merrill Lynch, Pierce, Fenner &</u> <u>Smith, Inc. v. Sorac, Inc.</u>, No. 90-0606, 1991 WL 637106, at *3 (D.D.C. May 16, 1991) (transferring corporate funds to individual defendant's personal bank account constituted improper commingling of corporate and final assets in the veil piercing analysis).

The record also contains documents and testimony showing that Platinum Builders remained an "active" corporation, Pls.' Opp'n to Renovation Defs.' Mots., Ex. 19 (Deposition of VB Tile & Platinum, Inc. ("Platinum Builders Dep.")) at 122:16–18, even though it ceased doing business sometime in 2012, id., Ex. 19 (Platinum Builders Dep.) at 122:18, and that Villalobos contemporaneously began operating a new renovation business in late 2012 or early 2013, id., Ex. 17 (Deposition of Victor Villalobos ("Villalobos Dep.")) at 12:1–13:18, after this litigation ensued and a judgment was entered against the Renovation Defendants in the Zegarra proceeding, id., Ex. 18 at J00003160.  These facts create a genuine dispute regarding whether Villalobos was using the existence of Platinum Builders' corporate structure to improperly prevent creditors from recovering damages from him personally.  See, e.g., Sorac, Inc., 1991 WL 637106, at *5 (finding that inequity would result due to the defendant placing the corporation in a position in which the plaintiff would be unable to recover funds if judgment was entered in the plaintiff's favor).

### b.      Personal Liability as a Corporate Officer

In addition, the plaintiffs have identified evidence showing that Villalobos, as the contractor, hired and supervised an unlicensed subcontractor to perform some of the renovations, Pls.' Facts ¶¶ 37, 42; Renovation Defs.' Resp. to Pls.' Facts ¶¶ 37, 42 (not disputing the fact that the Renovation Defendants hired Zegarra to work on the Property and that he was unlicensed), facts which a jury could find constitute an "act or mission by [a corporate] officer which logically leads to the inference that he had a share in the wrongful acts of the corporation which constitute the offense," Perry, 505 F. Supp. 2d at 18; see, e.g., Lawlor, 758 A.2d at 977–78 (upholding the trial judge's finding of sufficient evidence to hold individual corporate officers who were the "principal actor" in wrongful conduct liable individually for their "own tortious

conduct"); Snow v. Capitol Terrace, Inc., 602 A.2d 121, 127 (D.C. 1992) (holding that the landlord, as a corporate officer, could be held personally liable for injuries to the tenant where record showed the landlord physically pulled down a section of the ceiling that subsequently fell on the plaintiff, causing her injuries).  The Court will therefore deny the Renovation Defendants' motion for summary judgment on the issues of veil piercing and personal liability as a corporate officer in regards to Villalobos, and permit the plaintiffs to proceed to trial against him individually on their negligence claim.

### 2.      Defendant Collins

In an effort to shield Collins from personal liability for the plaintiffs' claims, the Seller Defendants largely revisit an argument rejected at the motion to dismiss stage, i.e., that D.C. Code Ann. § 29-803.04(a) bars the entry of a judgment against Collins personally due to his status as a member of a limited liability company, see Jefferson v. Collins, 905 F. Supp. 2d at 278 (finding that, D.C. Code Ann. § 29-803.04(a) notwithstanding, the plaintiffs' allegations were sufficient to support a plausible claim of Collins' alter ego liability), and in the alternative, they argue that no genuine dispute of material fact exists regarding Collins' personal liability, see generally Sellers' Mem. at 25–28

### a.      Veil Piercing

Contrary to the Seller Defendants' contention, see Sellers Mem. at 27, the record contains facts that create a genuine issue of fact regarding the first prong of the veil piercing analysis.  For instance, Collins holds a fifty percent stake in B&C Homebuyers with his co-member Brown. Pls.' Opp'n to Seller Defs.' Mot., Ex. 1 (B&C Homebuyers Dep.) at 29:14–1, but for the year 2011, he received approximately sixty-three percent of the company's profits, id., Ex. 1 (B&C Homebuyers Dep.) at 247–48.  Although B&C Homebuyers' main office is Brown's personal

residence, id., Ex. 1 (B&C Homebuyers Dep.) at 29:22–30:3, Collins works at his own residence, id., Ex. 1 (B&C Homebuyers Dep.) at 30:4–6.  B&C Homebuyers, through Collins and Brown as its corporate designees, testified that Collins loaned money to B&C Homebuyers at least five times without documenting the loans or requiring B&C Homebuyers to repay the loans with interest.  Id., Ex. 1 (B&C Homebuyers Dep.) at 1, 80:17–82:3.  The corporate designees also testified that B&C Homebuyers paid for credit card charges incurred by another business entity, Capital Roofing LLC ("Capital Roofing"), for which Collins was the president.  Id., Ex. 1 (B&C Homebuyers Dep.) at 152:22–153:7.  Furthermore, the corporate designees testified that its bookkeeping responsibilities were performed by a Capital Roofing employee, and that this employee was compensated only by Capital Roofing, not B&C Homebuyers.  Id., Ex. 1 (B&C Homebuyers Dep.) at 201:13–203:1.  These facts raise a genuine issue for trial regarding whether a unity of ownership interests existed between B&C Homebuyers and Collins.

But even though the plaintiffs are able to defeat summary judgment on the first prong of the veil piercing analysis, they have nonetheless failed to meet their burden to identify a genuine dispute of material fact regarding the second prong of the veil piercing analysis, i.e., use of the corporate form to perpetuate fraud or wrong or that injustice would result from a failure to pierce B&C Homebuyers' corporate veil.  Similar to their arguments regarding Villalobos, the plaintiffs identify the creation by Collins and Brown of Capital Roofing and Capital Home Services LLC ("Capital Home") in 2012, which were both engaged in the same business as B&C Homebuyers, to support the "inference . . . that Collins ceased operating B&C [Homebuyers] to avoid personal liability."  Pls.' Opp'n to Seller Defs.' Mot. at 10.  But unlike the evidence identified regarding Villalobos, see supra at 28–30 (discussing evidence creating a genuine dispute of material fact regarding whether Villalobos used Platinum Builders to avoid personal liability in a case brought

by a sub-contractor who worked on the Property), the evidence cited by the plaintiffs regarding

Collins' motives for starting Capital Roofing, see Pls.' Opp'n to Seller Defs.' Mot. at 10 (citing

excerpts of the deposition testimonies of B&C Homebuyers, Collins, and Brown), establishes

only that Collins and Brown started Capital Roofing in order to gain access to financing because

their lenders refused to loan funds to B&C Homebuyers as a result of this pending lawsuit, see

Pls.' Opp'n to Seller Defs.' Mot., Ex. 1 (B&C Homebuyers Dep.) at 239:1–249:21; id., Ex. 4

(Collins Dep.) at 15:2–16:15 (testimony establishing Collins ownership interest in Capital

Roofing and another business entity), id., Ex. 4 (Collins Dep.) at 21:1–29:3 (testimony regarding

Collins' professional background and licenses); id., Ex. 16 (Deposition of Adam Scott Brown

("Brown Dep.")) at 38:9–40:13 (testimony that Capital Home was formed by Collins and Brown

in 2012 and that it was engaged in the same business as B&C Homebuyers).  None of the

testimony cited by the plaintiffs raises a genuine issue of fact material as to Collins on the second

prong of the veil piercing analysis, and, therefore, the Court will grant summary judgment in

favor of the Seller Defendants on the issue of veil piercing in regards to Collins.

### b.    Personal Liability as a Corporate Officer

Although the plaintiffs make a passing mention of Collins' potential personal liability as

a corporate officer for his own actions, Pls.' Opp'n to Seller Defs.' Mot. at 4, they cite only a

purported dispute of fact, without any other citations to the record, to suggest that this Court

should deny summary judgment to the Seller Defendants on the issue of Collins' personal

liability as a B&C Homebuyers corporate officer, id. ("It is disputed as to whether Collins is

even a member of B&C since bank records and the lack of a full ledger fail to support any

allegations that he contributed capital at inception to be a member of B&C [Homebuyers].").

The plaintiffs' opposing brief makes no further mention of Collins' personal liability as a

corporate officer, <u>see generally</u> Pls.' Opp'n to Seller Defs.' Mot., and given that that neither the plaintiffs nor the Seller Defendants sought summary judgment on the specific issue of Collins' personal liability as a corporate officer, <u>see generally</u> Pls.' Mot.; Seller Defs.' Mot., which the Court has already explained constitutes an inquiry separate from the veil piercing analysis, <u>supra</u> at 27–28, the Court renders no judgment on this issue.

## IV.    CONCLUSION

For the reasons stated above, the Court will deny the plaintiffs' partial motion for summary judgment, grant in part and deny in part the Seller Defendants' partial motion for summary judgment, deny the Renovation Defendants negligence and alter ego motions, and grant the Renovation Defendants' CPPA motion.[4]

**SO ORDERED** this 26th day of September, 2016.

REGGIE B. WALTON
United States District Judge

---

[4] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.

34